EDMA G. TROUSSEAU *v.* BRUCE CARTWRIGHT and
HUGH McINTYRE, Executors of the will of GEORGE.
P. TROUSSEAU, deceased.

EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

SUBMITTED APRIL 1, 1896.                    DECIDED JULY 16, 1896..

JUDD, C.J., FREAR, J., AND E. P. DOLE, ESQ., A MEMBER OF THE.
BAR, IN PLACE OF MR. JUSTICE WHITING, DISQUALIFIED.

The condition in a contract to pay money "when my circumstances.
allow and as soon as they allow" is fulfilled by evidence that the
promissor was in receipt of money over and above his reasonable.
expenses, with which he could pay.

The fact that the executors of such promissor had not assets to pay
in full the sum contracted for by their decedent does not show
that the condition of ability to pay in the testator's life-time was
not fulfilled.

A contract contemplated money to be paid in installments, conditioned
upon ability to pay; evidence of ability to pay part of the sum con-
tracted to be paid is a fulfillment of the condition.

OPINION OF THE COURT BY JUDD, C.J.

(FREAR, J., Dissenting.)

At the term of this court held in September, 1895, in over-
ruling a demurrer we decided many points of law raised and
sent the case back to the Circuit Court, First Circuit, for trial.
The case came on for trial in December last before Circuit
Judge Magoon, jury being waived, who, on January 7th last,.
filed his decision disallowing the principal sum sued for, but
giving judgment for the annual payments stipulated to be in

lieu of interest.    The contract sued upon is an agreement in writing, made in 1882, between the late Doctor Trousseau and the plaintiff, who was alleged to be his "separated wife," by which Doctor Trousseau (defendants' decedent) admitted as absolutely correct the claims and demands proved by Madame Trousseau on the 11th March, 1882, amounting to 150,865 francs and 50 centimes, of which he engaged to pay immediately 20,000 francs, and also on the 1st January of each year thereafter, beginning January 1, 1884, a sum equal to 5,000 francs to be remitted by the French Consul to Madame Trousseau, in Paris, and to be regarded as interest on the capital remaining of 130,865 francs and 50 centimes.    Mons. Trousseau then engaged, "if his circumstances allow and as soon as they allow him to discharge the total amount of his debt to Madame Trousseau, by paying over to her the capital which will remain due to her."    There is also a provision that "as soon as this capital is reduced to 100,000 francs, the annual sum of 5,000 francs settled as above will decrease in proportion as the total debt is extinguished," &c.    Another provision is that as soon as the first installment of 20,000 francs is paid Madame Trousseau was to discontinue a case then pending in our court against Doctor Trousseau for a larger amount. (This sum was paid and the case was discontinued.)    The last provision is that the articles of agreement should be performed in good faith by both parties, and in the event of non-payment of any of the sums mentioned at the date when it falls due, Madame Trousseau will be at liberty to renew proceedings upon the mere information which shall have been given to her by the French Consul at Honolulu that the sum of money has not been paid at the date when it falls due.    (The agreement is set out in full in *Trousseau v. Trousseau, ante,* p. 139. The annual payments of 5,000 francs were regularly made until 1st January, 1894, but none was paid thereafter, and no part of the principal was paid by Doctor Trousseau during his lifetime.

In order to sustain the conditional promise of Dr. Trousseau

that he would pay the principal sum "if his circumstances allowed him and as soon as they allowed him," the plaintiff introduced as evidence of his ability to pay the principal sum sued for, which reduced from francs to dollars is $26,173, his last will and testament, executed March 8, 1894, wherein he devised all his property to one Makanoe, a native woman, in which he declares: "I die poor, and am only sorry for her sake, as I never had any love for money and *always had enough.*" There was also introduced in evidence the executors' inventory of the decedent's property, showing the liabilities (secured by mortgage and otherwise) to be $19,843.61, and the property, real and personal, estimated by the executors to be worth $35,914.01, which would leave the net assets to be $16,070.40. The cost of the decedent's property is put by the executors at $62,317.83, but they estimate the actual value to be, as stated, $35,914.01.

The trial court held that, as it was "extremely uncertain whether an estate will realize the expectation of an executor entertained several months before the assets have been turned into cash," he could not give a decision based upon such testimony, and therefore declined to find for the plaintiff the principal sum, but allowed the arrears of the yearly installments of 5,000 francs, the sum of $1,158,16, its payment not being conditioned upon ability to pay. The plaintiff excepts to the finding of the court in disallowing the principal sum. In reviewing this case we remark that the trial court was right in holding that the promise of Dr. Trousseau to pay the principal was not absolute, but was conditioned upon his circumstances allowing him to pay it, and that ability to pay must be shown as a prerequisite to recovery. But it seems to us that the trial court proceeded upon the theory that the test of the ability of a promissor, who has died, to pay is the amount of assets which he may happen to leave at his death. This is not the test. The plaintiff must show that the promissor's circumstances allowed him to pay. Certainly the existence of clear assets, over all liabilities, sufficient to discharge the whole

amount, would be evidence, but the converse is not true, namely, that the amount of property left by the promissor after all his other debts were paid in full, if not sufficient to pay the principal sum sued for, is not evidence of his inability to pay during his lifetime.

In discussing the question whether the evidence adduced shows ability to pay during the lifetime of Dr. Trousseau, we must remember that he declared in the agreement that he owed the principal sum; that he promised to perform the agreement in good faith, and that he would pay the principal *as soon* as his circumstances would allow him to do so. The agreement contemplates payment by Doctor Trousseau of the principal by installments, provision being made for the proportional reduction of the yearly payment of 5,000 francs, as soon as the capital sum was reduced to 100,000 francs at the rate of 5 per cent. Whenever the principal debt should be paid the interest would cease, it having been reduced proportionately as the principal was reduced. Another expression in the agreement sustains the view that partial payments by Doctor Trousseau were contemplated. It is in the latter part of the first clause of Article 4, where he engages, if his circumstances allow him, &c., "to discharge the total amount of his debt to Madame Trousseau, by paying over to her the capital *which will remain due to her.*" These words "which will remain due to her" would be unnecessary and meaningless unless it was contemplated that the principal was to be reduced from time to time as the Doctor was able to make payments. Nowhere in the agreement do we find an expression that implies that the decedent's circumstances must allow him to pay the principal sum in full at one time, or he be freed from the obligation to pay it at all. A person having made such a promise, if construed the other way, could easily defeat his liability by expending his money or giving it away as fast as he received it, in order never to have enough on hand to pay the debt in its entirety.

Now "good faith" would require that where the decedent

earned and received sums of money over and above the reasonable expenses of living of a man in his position, he should apply it to the discharge of this obligation. That he was in receipt of money over and above his reasonable expenses is evidenced by the inventory on file, where, for instance, $10,974 were shown to have been expended by him in the purchase of 28 ostriches for $7,950, and the remainder of this sum in buildings and other equipments of an "ostrich farm." To say the least, the investing of over $10,000 in a new and hazardous enterprise is some evidence that Dr. Trousseau's circumstances admitted of his paying at that time something on account of the debt he owed Madame Trousseau.

Another item in the inventory is "Boat House Property"— costing $2,075 and consisting of a steam launch, a catamaran, two other boats and a naptha whaleboat. By the will of Dr. Trousseau it appears that he was paying $25 per month for rent of boat house and wages of boat keeper. Indulgence in the pleasures of boat sailing, while perfectly proper in a person owing no debts, was inconsistent with his obligations under the agreement, and is evidence of his ability to discharge a portion of his debt under the agreement equal to the amount expended on these amusements.

The will of Dr. Trousseau declares that he "always had enough." An inference from his language would be that he always had enough with which to discharge his obligations and live comfortably, but from the whole context of the will we cannot find that he intended to have this inference drawn from this language. The will was drafted by himself and was apparently not carefully studied. Other expressions in the will, however, as when he directs his executors "to oppose absolutely any interference from the French Consulate in my affairs. I am a Hawaiian subject and I wish to dispose of my property according to Hawaiian law," and, leaving his property to the person above stated, "after all my lawful debts in *Honolulu* are paid," indicate that the comparatively small amount of assets which were left after his debts were paid is no indication

that his circumstances would not have allowed him to discharge the obligation to Madame Trousseau, but rather that he, being able, was not disposed to do so. He was not by the agreement to be the judge as to whether his circumstances allowed him to pay the obligation in question.

It seems to us that the trial Judge did not give adequate weight to these circumstances. In our minds, this evidence, it not being contradicted by the defendants, is evidence that the circumstances of defendants' decedent admitted of his paying since the making of the agreement, during his lifetime, of the principal sum or some part of it. Now, proof of ability to pay a part of the principal sum would be a fulfillment of the condition in the agreement to pay, and this being shown to the satisfaction of the court, would warrant a judgment for the whole amount, and if the property of the decedent be insufficient to discharge it and the other debts in full, both it and they will have to be paid pro rata by the executors, treating the estate as insolvent.

It seems to us that the agreement obliged the decedent to make payments on account of the principal sum from time to time as his circumstances allowed him, and that the evidence adduced by the plaintiff tended to show that he was thus able. A new trial should, therefore, be ordered, on the ground that the finding of the court was based upon a misconception of the meaning of the contract and a misapplication of the evidence to it.

New trial ordered.

*A. S. Hartwell* and *W. L. Stanley*, for plaintiffs.

*C. Brown* and *L. A. Dickey*, for defendants.

### OPINION OF E. P. DOLE, ESQ.

The controlling principle is the intent of the parties—what did they say?—what did they mean? The contract is exceedingly long and very loosely drawn, but upon carefully examining it as a whole, it seems clear to me that the parties

must have understood and intended that Dr. Trousseau was to pay the debt as he could and that a neglect to pay on account as his circumstances permitted should render the whole immediately due. Dr. Trousseau explicitly stated that the justice of the claim was beyond dispute, he bound himself to pay it if his circumstances allowed and as soon as they allowed, in naming the rate of interest he provided that the amount of interest should be reduced in proportion as the total debt was extinguished, and he agreed that a failure to make the payments mentioned when due should render the whole debt due. I think it would be a forced, unreasonable and unbusinesslike construction of the language Dr. Trousseau used to hold either that he bound himself to make payments as often as he had a few dollars in excess of his immediate necessities or that he reserved the right to accumulate more than one hundred and thirty thousand francs before making a single payment. In construing a contract the language used (technical words excepted) is to have its ordinary and popular meaning unless an intention to the contrary plainly appears, and, in determining what such meaning is, a court is bound to take judicial notice of the established usages of the business world.

The question what should be considered as substantial payment or ability to make one is eliminated from the case, for the evidence is undisputed that Dr. Trousseau, if not able to pay the entire debt at any one time, was able to pay many thousands of dollars.

For the foregoing reasons I concur in the result reached by the Chief Justice.

### DISSENTING OPINION OF FREAR, J.

I respectfully dissent. The Circuit Court, jury waived, found for the plaintiff for the interest, and against the plaintiff for the principal sum sued for. The plaintiff excepted "to the refusal of the court to find for her or to order judgment for her for the principal sum of $26,173 claimed by her in her declaration, and to the ruling of the court that the evidence

failed to authorize such finding and judgment." She then moved that in place of the judgment ordered for her for the interest, judgment be entered for the full sum of the principal and interest on the following grounds:

"1.   Decedent's will, which is in evidence, is *prima facie* evidence that his circumstances allowëd him during his lifetime to pay said principal sum.

"2.   Defendants' inventory, which is in evidence, is *prima facie* evidence that decedent's estate allowed defendants to pay said principal sum.

"3.   Defendants by their plea of general issue, have admitted assets, and are thereby precluded from claiming any benefit from the testator's conditional promise, or that they have not assets with which to pay the principal sum.

"4.   Defendants are obliged by law to pay all the decedent's legal obligations pro rata, except preferred debts, if the estate is insufficient to pay them all in full. The principal sum here claimed, as acknowledged by decedent in the agreement declared on, was due and owing by him to the plaintiff. The necessity of winding up the decedent's estate, the statute of limitations of claims against the estates of persons deceased dispense with and do not require nor permit the postponement of plaintiff's claim until it shall appear that after all other claims have been paid in full there shall remain sufficient property wherewith to satisfy the plaintiff's claim."

This motion was denied and the plaintiff excepted to the denial.

These are the only exceptions brought here by this bill. Plaintiff's counsel states in his brief that the second exception (to the denial of the motion for judgment) is practically the same as the first exception (to the refusal to find for the plaintiff for the principal sum, and to the ruling that the evidence failed to authorize such finding). It will, therefore, be necessary to consider only the points raised specifically by the second exception. These are four in number. I will first touch upon

the third and fourth points—which are not referred to by the majority of the court.

The argument on the third point is that the executors, in order to avail themselves of the defense of *"nulla bona"* or of *"plene administravit,"* should have set it up by special plea. Without expressing an opinion as to whether these defenses, to be available should be specially pleaded under our statute or practice, it is sufficient to say that in this instance the executors do not rely on either of these defenses. The plaintiff declared on a conditional promise, namely, Dr. Trousseau's promise to pay a sum of money if and as soon as his circumstances allow it, and alleged fulfillment of the condition. A general denial was a sufficient traverse of the allegation of the fulfillment of the condition, and the burden was on the plaintiff to sustain the allegation. The fact that the condition happened to be the possession of sufficient assets by the decedent did not make it different from any other condition precedent, the fulfillment of which must be shown. The defense relied on was not the affirmative one of *"nulla bona,"* but a mere denial of the truth of a necessary allegation made by the plaintiff.

The argument on the fourth point is substantially that Dr. Trousseau's death, by rendering impossible the fulfillment of the condition precedent, makes it unnecessary to prove fulfillment; in other words, that the conditional promise became absolute upon his death. A promise to pay a sum of money upon the happening of an uncertain event, and which remains conditional so long as there is doubt whether the event will ever happen, does not become absolute when it becomes certain that the event will never happen. *In re Bethell,* L. R. 34 Ch. Div. 561, was a case similar to this, in which the action was brought after the death of the promisor, but the court held that proof must be made of the promisor's ability to pay during his life.

As to the first point, I agree with the majority of the court that decedent's will does not show that his circumstances allowed him during his life to pay the principal sum.

As to the second point also, I agree with the majority of the court that the executors' inventory does not show that decedent's estate allowed them, the executors, to pay the principal sum. It is true, as contended by plaintiff's counsel, that the inventory is *prima facie* evidence of such assets as are shown by it, but it must be taken as a whole, and, so taken, it shows, "total assets, $35,914.01," and "total liabilities, $19,843.61," of which liabilities $15,000 are notes secured by mortgages, and therefore preferred claims. Thus, including uncollected accounts as assets, and without deducting the unsecured claims, there remain only $20,914.01, which certainly cannot be said to allow the payment of the principal sum, $26,173; and this is the most favorable view for the plaintiff that can with any show of reason be asked to be taken of the inventory. If the inventory is not correct, or if the decedent had been in fact at any time after the execution of his agreement able to pay the principal sum, the plaintiff should have adduced further evidence to show it.

It would seem as if there were nothing further to be said, except that all the exceptions should be overruled, since all the points raised by these exceptions have been disposed of adversely to the plaintiff; but the majority of the court have come to the conclusion that a new trial should be granted upon consideration of a point which, so far as I can see, is not raised by the exceptions, and under the circumstances I deem it my duty to express my views on this point also.

As I understand it, the majority of the court decide that Dr. Trousseau was bound to make payments on account of the principal sum as fast as he could; that failure to pay any amount on account when he could, rendered him at once liable for the whole principal sum; that the inventory is evidence that he could pay something on account during his life, and that as the trial Judge did not take this view of the case a new trial should be ordered.

Let us consider these propositions in their inverse order. First, that as the trial Judge did not take this view of the case a new trial should be ordered. The attention of the trial Judge

was not called to this view of the case, and no exception was taken to his omission to consider it, and therefore it should not be considered by this court. See *Norris v. Herblay*, 9 Haw. 514; *Byrne v. Allen, ante*, p. 338. The trial court ruled as a matter of law that ability to pay the principal sum must be shown, to which ruling no exception was taken; the exception in regard to the inventory was taken to the refusal or failure to find as matter of fact that the inventory was sufficient "evidence that decedent's estate allowed defendants (the executors) to pay said principal sum."

Secondly, that the inventory was evidence that Dr. Trousseau could pay something on account during his life. I agree with the majority of the court that the inventory was evidence of this fact; and, for that matter, the will also was sufficient evidence of the fact, for it refers to most of the property covered by the inventory. But this fact should not be considered on these exceptions, and it is immaterial in view of the law as I find it.

Thirdly, that failure on the part of Dr. Trousseau to pay something on account when he could rendered him at once liable for the whole principal sum. I know of no proposition of law to the effect that, where one promises to pay a sum of money in installments, failure to pay one installment when due makes all the other installments or the whole sum due at once. Stipulations are sometimes made to that effect, as often in mortgages, but in the absence of such stipulation an action lies for such installments only as are due and unpaid. Whether Article 8 of the agreement in question amounts to such a stipulation is a question neither raised by these exceptions nor relied on by counsel. If it were such a stipulation it would be unnecessary to consider the inventory at all, for it is undisputed that one installment of 5,000 francs expressly provided for in the agreement has not been paid. Even if, therefore, Dr. Trousseau was required to make payments on account when he could, then judgment could properly be given for only such an amount as the evidence shows he could have paid; it could not properly be given for the whole principal sum upon a showing merely that he could have paid a part.

But, fourthly, I cannot see how the agreement can be construed as binding Dr. Trousseau to make payments on account of the principal sum as fast as he could. There can be no question that the agreement contemplates that payments *may* be made on account, but this is very different from the proposition that they *must* be made. Agreements are often made for the payment of a sum of money at a particular time with the privilege (without the obligation) of paying the whole or a part at an earlier date.

Dr. Trousseau's only promise in this respect was to pay the "total amount" if and as soon as his circumstances allow him. This cannot be construed to mean that he must pay "each part," if and as soon as his circumstances allow him. Similar promises have often been made, but such construction has never been placed upon them. See, for instance, the case of *Salinas v. Wright*, 11 Tex. 572, a case very similar to this, in which there was an absolute promise coupled with a similar condition, as follows: "I am indebted to John Wright in the sum of one hundred and forty-eight dollars; which sum I bind myself to pay, as soon as circumstances will permit me." See also *In re Bethell*, L. R. 34, Ch. Div. 561; *Mattocks v. Chadwick*, 71 Me. 313; *Shepherd v. Thompson*, 122 U. S. 239; *Bidwell v. Rogers*, 10 Allen 438; *Laforge v. Jayne*, 9 Pa. St. 412. And in the case at bar such construction appears not to have been thought of until suggested by a member of this court.

The circumstances of the case also bear out this view. Madame Trousseau had brought an action against Dr. Trousseau upon a French claim some fourteen years old. There must have been some doubt on both sides as to the result of the suit. The parties thought it best to compromise. Dr. Trousseau acknowledged an indebtedness of a certain amount and promised to pay part of it at once, the balance when his circumstances allowed it, and meanwhile a certain amount annually as interest. In consideration of this, Madame Trousseau agreed to discontinue her suit and accepted these promises, part of them absolute, part conditional, in place of her old claim. If the parties chose to make

such agreement they had a right to do so, and cannot complain now if they are held to it. One installment of 20,000 francs was expressly agreed to be paid at a definite time, immediately; so of the installments as interest, annually; but the payment of the balance of the principal was expressly made conditional upon Dr. Trousseau's circumstances allowing him "to discharge the total amount." There could have been no doubt that at that very moment he was able to pay something more than the exact 20,000 francs agreed to be paid at once, or that he would very soon afterwards be able to pay something on account, and if so, he could under the ruling of the majority of the court have been sued forthwith, or at least as soon as it could be shown that he could have paid something on account and had not done so. This would practically deprive him of all benefit of his contract. The parties certainly have not during these sixteen years of the contract placed any such construction upon it, namely, that failure to pay on account, when able, any amounts (whether large or small) would authorize either repeated suits for such sums as could have been paid or a suit at once for the whole principal sum. No middle ground can be taken, as, for instance, that payments must be made, not in small sums as they come in from day to day, but in reasonably large sums from time to time when the accumulations have become large enough to make a substantial payment, for there is no criterion to go by for ascertaining when the accumulations would be large enough to call for a payment, and no such position can be supported by anything in the agreement.

Contracts of the kind in question have often been made and have often been construed by courts. Two views have been taken. One is that the condition is so uncertain as to be void, thus leaving the promise absolute and permitting recovery at once without any showing of ability to pay. This view is held by only a few courts and is certainly against the whole tenor of the agreement in question. The other view is that recovery may be had only upon showing fulfillment of the condition, namely, ability to pay the principal sum. This is the prevailing view.

No middle ground has ever been taken elsewhere so far as I have been able to ascertain.

Where a just debt exists the court will endeavor to grant relief if possible, but courts are bound to decide according to established rules of law and agreements as made by the parties themselves, and to deny relief sometimes in particular cases where they would prefer to grant it, as sometimes where a just debt has become barred by the statute of limitations. In this particular case as it comes to this court I do not see how the plaintiff can prevail. This is not holding that she has no remedy at all, but only that she cannot prevail in this particular case upon this particular question.

It is argued that it is "an astonishing proposition that the plaintiff can have her interest money and not the principal." This may be quite true where, as appears to be the case here, the interest sued for and allowed is not one of the installments of 5,000 francs expressly agreed to be paid as interest in Article 3 of the agreement, but is damages for the detention of the principal sum from the time when the principal sum was supposed, but not found by the court, to be due. The logical conclusion under these circumstances would be, not to make another error by allowing the principal sum, but to correct the first error by disallowing the interest. This cannot, however, be done on this bill of exceptions, as the plaintiff did not except to the allowance of interest. If the interest sued for and allowed were that provided for in the agreement, it would of course not be astounding to allow it without the principal, for, as above stated in regard to an installment of principal, it is proper to sue for an installment of interest when due, without suing for the principal, for in such cases failure to pay the interest when due does not render the principal due or authorize judgment for it.