NETTIE S. JOHNSTON *vs.* NORRIS H. HUSSEY, Executor.

Lincoln.    Opinion February 1, 1897.

*Stat. Limitations.   New Promise.   R. S., c. 81, § 97.*

No acknowledgment or promise by a debtor will defeat or postpone the operation of the statute of limitations, "unless the acknowledgment or promise is express, in writing, and signed by the party chargeable thereby." R. S., c. 81, § 97.

*Held;* that the acknowledgment must be in writing,—must be contained and found in the writing. It must be an "express" acknowledgment also. It is not enough that the original promise is proved. The new promise or acknowledgment must be proved to have been expressly made; and the proof of this must be found in the signed writing.

*Held;* in this case, that there are no words in the writing indicating that the person sought to be charged promised to make a money payment for the services and supplies sued for, or that he expressly acknowledged any liability therefor. An acknowledgment of a mere moral obligation, however strong is not sufficient.

*Also;* that the interpretation of such writing is for the court, and not for the jury.

## ON EXCEPTIONS BY DEFENDANT.

Assumpsit on account annexed to the writ. The writ was dated November 16, 1886. The action was originally brought against Job Hussey, who was then living, but died soon afterwards; and upon his decease the present defendant came in as executor and assumed the defense of the suit.

The defendant pleaded the statute of limitations, by brief statement under the general issue. The last item in the account annexed is dated June 18, 1879.

It was admitted at the trial that the demand would be barred by the statute of limitations, unless that statute was avoided. For the purpose of such avoidance the plaintiff introduced a paper, in the form of a letter, signed by William Johnston, the husband of the plaintiff, dated February 4, 1886, and addressed to Norris H. Hussey, as follows:

Brother Norris H. Hussey.—A letter addressed to mother Hussey in reply to one written to yourself by Hattie at mother's dictation, has come into my hands as it very properly should, from the fact that by intimation and direct reference both myself and family are involved. Now as you could not have possibly made the suggestion with a clear understanding of existing facts, I shall merely set them before you, and not allow the matter to further annoy me. I refer to your letter wherein you suggest that your father call upon me for money on account of the horse, and "if he can't pay him why not sell him to someone who can," and again, "they take his (father's) goods and that seems to be the last of it." If that is the fact I have no part of the imputation to take to myself or family and as you further ask to "know how matters stand" I put a statement in at this time when living witnesses may give undoubted evidence of the truth of the statement and to the

end that our future family relations may in no way be marred or inharmonious.

## STATEMENT.

Twenty-one years since I married your sister, Hattie A. Hussey, and for a few weeks boarded with your parents paying my board. Then we went to housekeeping in the neighborhood, but it is a fact that Hattie took nothing from home but her little trunk of personal apparel, and she certainly received nothing thereafter excepting small items of parental affection, and for such items, at all times and by different methods seeking to return an equivalent. You well know that all too soon we were called to lay her in the church yard, and that in time, I reunited my family circle in the person of a younger sister, Nettie S. Chase. Did she ever seek to rob her parents? Let the facts speak for themselves. By your mother's invitation, at her husband's, Capt. Chase's departure for sea, Nettie with her little child returned to her former home, and cared for her parents filially, giving herself untireingly to the household duties, largely relieving your mother in her advancing years from cares and fatigue; thereby to the satisfaction of your parents, making ample remuneration for the board of the child and herself.. The household furniture she possessed was also taken to the old home, and made useful both to her gratification and that of your parents, for the family benefit, replacing that which time and wear had consumed and destroyed; meantime the sorrow of her life came, and she was left a widow, and so remaining with her father and mother until our subsequent marriage. During the interval wherein she remained at her father's house, aiding and assisting as stated; she also from to time and upon their necessity advanced money for provisions, clothing and repairs as shown by her memorandum and as follows:—[Items omitted.]

Additional to the cash advanced before stated Nettie S. Chase furnished for the use of her parents and leaving the same in their possession and in their care for proper usuage as long as they may need or until she may reclaim it, the following itemized list of furniture, dishes, clothing, etc., fairly valued as follows:—[Items omitted.]

Having made statements in regard to your sister's relations and accounts of home expense, I will now refer to myself. As before stated I boarded at your father's for a period when I was first married in 1864 and 5, paying my board, and again after Hattie's decease with myself and children, paying regularly for both the board of myself and family at a fair price, or at least paying a price for which other good parties would have boarded us at the time, and for which if it may at any time be deemed proper I shall be able to show account.

And now let me pass to the matter of the horse to which you specially refer. After 1881 both as regards to the statement of your father's and my own knowledge, that the horse was for most part of the time doing nothing and on expense.

In order to decrease your father's expenses by making the horse earn something and at the request of your father, I took the horse at various times when he could not use him keeping him in all, from four to five months, frequently boarding him when I had no use for, and at one time immediately after J. P. Hatch had used him in haying leaving him sick, I took care of him for a period of ten days going myself to the stable and hiring a horse; and for such time of use I paid in cash and merchandise over forty-four dollars for his use and furnishing during the same period my own carriage. Sometime during the spring of 1885, the horse being at home and doing nothing, and your father being unable to tend him, I wished to go to two or three different places and I got the horse and kept him for one month, when all my hay having been used, I returned him to your father, he then told me he was sorry to have him come back, that he was not able to take care of him, I replied that I had no hay, well he said, go to the barn and get the hay. Furthermore he said he wished to sell him, and "Noll" said that he was not worth over sixty-five dollars. I told him that I considered the horse worth more, I took the horse home with me and a small amount of hay at different times, in all not more than 300 pounds, thinking of some pedling I might do. I one day told "Hattie" that if I could not sell the horse, if business proved favorable, I might buy the horse, she told your father what

I had said and he told her that I could have the horse and harness for eighty-five dollars; since that time I have had no talk about buying the horse with him, and there has been no time but what the horse has been in the market for sale, and if you want him or can sell him, he is at your disposal.   Meantime I have found that your parents were in need of money for various objects and were I in a paying business, I would have with pleasure advanced to their necessity.   And as it is I have paid out on bills of their account thirty-eight and twenty-four hundredths dollars which to-day remains as a bill on account of the horse.

If you then have a place for him I shall be exceeding glad of the turn of events as I am aware that they need any balance to be obtained above the amount named as advance and with a fair sale it would help them much as the horse is conceded by all to be worth from ten to fifteen dollars more than he was when he came into my possession.        Yours very truly,

Damariscotta, Feb'y 4th, 1886.          WM. JOHNSTON.

JOB HUSSEY.

RUTH HUSSEY.

Witness to the above signature of Job Hussey and Ruth Hussey after a complete reading of it in their hearing, each personally acknowledging the accounts as valid and statements true.

HATTIE M. JOHNSTON.

Damariscotta, Feb'y 4th, 1886.

The plaintiff contended that the paper above mentioned had the effect of taking the case out of the operation of the statute of limitations; and the defendant, per contra.

The presiding justice instructed the jury as follows:

Now comes the claim that it is outlawed.   I shall rule that if he signed that paper which was within six years of bringing the action, if he signed it knowing what it was, if he was not defrauded when he signed it, cheated, deceived, if he signed it, and then knew what it was, its legal effect would be assenting to all the statements in the paper, and assenting to that would be an acknowledgment which would take the case out of the statute of limitations.   The legal effect, and it is on the paper itself, that is

for the court to say. All papers are for the court, and when the court gives a construction to a paper, that is to be taken in connection with the other circumstances in the case. Now the legal effect. There is a letter written to the man who is now executor, and certain declarations and statements are made, and these accounts are both set out upon that statement, and Mr. Johnston signs it, and Job Hussey and wife sign it. It is in the form of a letter written by three persons, and if they understood it, it is just the same as if each one had written the same letter; and the legal effect of that paper, if fairly made and understood by the party who signed it, is that he assented to all that preceded his name, and that assent is an acknowledgment in writing which takes this claim out of the operation of the statute of limitations.

The verdict was for the plaintiff, and the defendant took exceptions.

*W. H. Hilton*, for plaintiff.

Where the courts have held that the acknowledgment or promise must be made to the creditor, his agent or attorney, the decisions have been qualified with the proviso that where the acknowledgment is to a stranger and it appears that it was the intention that the acknowledgment made to him should be communicated to and influence the creditor, it is just as effectual to defeat the statute of limitations as if it had been made directly to the creditor or his authorized agent. 13 Am. and Eng. Ency. of Law, page 760 and cases.

In *Whitney* v. *Bigelow*, 4 Pick. 109, the court holds that the acknowledgment is binding whether made to a party or his agent or to a stranger. This doctrine is recognized and cited by this court in *Peavey* v. *Brown*, 22 Maine, 103–104.

It is immaterial whether the acknowledgment was before or after the statute bar had fallen. In either case it set the statute running afresh from its date, and it is generally held that no stronger evidence is required in one case than in the other.

*W. H. Fogler and G. B. Sawyer*, for defendant.

SITTING: WALTON, EMERY, HASKELL, WHITEHOUSE, WIS-
WELL, STROUT, JJ.

EMERY, J.   This was an action by a married daughter against
her father to recover for supplies furnished her father and mother.
The action was prima facie barred by the statute of limitations
pleaded by the defendant.   Within six years before the date of
the writ, however, the husband of the plaintiff wrote out a state-
ment of the supplies and services furnished, as set out in the
account annexed to the writ.   This statement was in the form of
a letter written to the brother of the plaintiff and was signed by
the writer.   Under the signature of the writer was added the
signature of the father.   Under their signatures was a statement
signed by one Hattie M. Johnston to the effect that the father
acknowledged the accounts as valid and the statements true.   It is
to be noticed, however, that this latter statement was not signed
by the father.   His signature only applied to the letter itself.
The presiding justice ruled that the letter signed by the father
was sufficient to remove the bar of the statute of limitations, and
the jury found for the plaintiff.

After much and varying judicial exposition, statutes of limita-
tions are now almost universally held to be statutes of repose, to
be interpreted and applied to effect that purpose.   Any act or
declaration interposed to defeat or postpone that effect is to be
closely scrutinized.   The legislature of this state has enacted that
no acknowledgment or promise by the defendant shall defeat or
postpone the operation of the statute " unless the acknowledgment
or promise is express, in writing, and signed by the party charge-
able thereby."   R. S., chap. 81, § 97.   The acknowledgment
must be in writing,—must be contained and found in the writing.
It must be an " express " acknowledgment also.   It is not enough
that the original promise is proved.   The new promise or acknowl-
edgment must be proved to have been expressly made, and the
proof of this must be in the signed writing.   The acknowledgment
must also at least savor of a promise to pay.   It is not enough that
a jury could, or probably would, infer a new promise from the terms

of the acknowledgment. The terms must be such that the court itself will infer a new promise from them. The most profuse acknowledgment of gratitude, or of any other moral obligation, for articles or services furnished will not do. The acknowledgment must be of an existing legal cause of action. It must show a recognition of a legal obligation and an intention, or at least a willingness, to be bound by it. It must be an acknowledgment of a legal debt, a legal duty. A mere acknowledgment that a cause of action once existed is not enough. A full acknowledgment of all the facts alleged by the plaintiff will not suffice unless there appears also a recognition of the legal duty. In fine, in the words of the usual replication to the plea, it must appear from the writing alone that "the defendant promised within six years." Wood on Lim. pp. 128, 129, 139 and notes; *Perley* v. *Little*, 3 Maine, 97; *Porter* v. *Hill*, 4 Maine, 41; *Miller* v. *Lancaster*, 4 Maine, 159; *McLellan* v. *Allbee*, 17 Maine, 184; *Warren* v. *Walker*, 23 Maine, 453; *Lunt* v. *Stevens*, 24 Maine, 534; *Perry* v. *Chesley*, 77 Maine, 393; *Bangs* v. *Hall*, 2 Pick. 368; *Barnard* v. *Bartholomew*, 22 Pick. 291-3; *Weston* v. *Hodgkins*, 136 Mass. 326; *Clementson* v. *Williams*, 8 Cranch, 72; *Bell* v. *Morrison*, 1 Pet. 351; *Shephard* v. *Thompson*, 122 U. S. 231.

Recurring now to the writing to be construed in this case, it may be conceded that the father acknowledged in writing over his own signature that the plaintiff paid bills for him and his wife, and furnished money, provisions and clothing to them, as shown by the memorandum in the letter, and the same sued for. But we do not find in the letter any intimation that the plaintiff intended to charge her parents or either of them for such assistance. Neither the letter nor the memorandum in it contains any words of charge. No claim is made in the letter that the plaintiff had any right of action therefor. On the other hand, it appears from the letter that the plaintiff was living with her parents at the time. It is stated that she "cared for her parents filially." Indeed, throughout the letter the writer claims for his wife credit for her generosity in so freely relieving her parents' necessities, and repels the suggestion that he or she had acted toward them

unfairly or ungenerously. The father by signing the letter may have acknowledged in writing the kindness of his daughter and the justice of her claim that she had been filial and generous; but we do not find in the letter any words indicating that the father promised to make a money payment for the services and supplies, or that he expressly acknowledged any liability therefor.

It is suggested that the father, beside signing the letter, acknowledged the account to be valid. But this acknowledgment of the validity of the account is not signed by the father and hence is not his written acknowledgment. It is suggested, again, that as the jury found for the plaintiff, it must be assumed that the father did originally promise to pay for the services and supplies, and hence his written acknowledgment that he received them is an acknowledgment of his legal liability to now pay for them. This does not follow. The writing signed by the father is alone to be searched for evidence of a promise. This search is to be made by the court, not by the jury. The opinion of the jury is immaterial.

*Exceptions sustained.*