# SHEPHERD v. THOMPSON.

ERROR TO THE SUPREME COURT OF THE DISTRICT OF COLUMBIA.

Argued April 25, 26, 1887. — Decided May 27, 1887.

A promissory note, secured by mortgage of the same date, is not taken out of the statute of limitations, as against the debtor, by a writing signed by him, by which "in consideration of the indebtedness described in the" mortgage, a claim of his against the government, and its proceeds, are "pledged and made applicable to the payment of said indebtedness, with interest thereon at the rate of eight per cent per annum until paid," and he promises that those proceeds shall "be applied to the payment of said indebtedness, with interest as aforesaid, or to so much thereof as" those proceeds "are sufficient to pay."

When exceptions taken by the plaintiff to a ruling in favor of the defendant at one trial have been erroneously sustained and a new trial ordered, and a contrary ruling upon the same point at the second trial has been erroneously affirmed upon exceptions taken by the defendant, this court, upon a writ of error sued out by him, will not, on reversing the judgment of affirmance, direct judgment to be entered on the first verdict, but will only order that the second verdict be set aside and another trial had.

THIS was an action brought March 11, 1880, by John W. Thompson against Alexander R. Shepherd, upon two promissory notes, dated March 10, 1873, made by the defendant and payable to the plaintiff, the one for $7000 in two years, and the other for $8000 in three years, with interest at the yearly rate of eight per cent. The defendant pleaded the statute of limitations.

The record transmitted to this court showed that the case was tried twice, and that at each trial the plaintiff put in the following evidence: 1st. The notes sued on. 2d. A deed of trust of the same date, in the usual form of mortgages of real estate in the District of Columbia, and recorded in the land records for the District, liber 712, folio 128, by which the defendant conveyed to the plaintiff certain land described, in trust to secure the payment of these and one other note. 3d. A deed, dated November 15, 1876, by which the defendant conveyed his property and choses in action, including a claim against the United States for the use and occupation of the premises No. 915 E Street Northwest in the city of Washington, to George Taylor and others, in trust to apply for the benefit of his creditors. 4th. An instrument signed by the defendant and A. C. Bradley, assented to in writing by Taylor and his co-trustees, the body of which was as follows: 

" In consideration of the indebtedness described in the deed of trust to William Thompson, trustee, executed March 10, 1873, and recorded in liber No. 712, folio 128, of the land records of the District of Columbia, the demand and claim of A. C. Bradley to the use of A. R. Shepherd and others against the United States for the use and occupation of the premises No. 915 E Street Northwest, and all the proceeds

thereof and the moneys derived therefrom, are hereby pledged and made applicable to the payment of said indebtedness, with interest thereon at the rate of eight per cent per annum until paid; and it is hereby covenanted and agreed that any draft or check issued in payment or part payment of said claim shall be indorsed and delivered to the trustee named in said trust, and the proceeds thereof, less all proper costs and charges, be applied to the payment of said indebtedness, with interest as aforesaid, or to so much thereof as the sum or sums of money so received is or are sufficient to pay. Witness our hands this 21st day of June, 1877."

At the first trial, the judge ruled that this instrument was insufficient to take the case out of the statute of limitations, and a verdict and judgment were rendered for the defendant, which, upon a bill of exceptions of the plaintiff, were set aside at the general term. 1 Mackey, 385.

At the second trial, the judge, against the objection and exception of the defendant, instructed the jury that this instrument was evidence of a new promise, which took the notes sued on out of the statute of limitations. A verdict and judgment were rendered for the plaintiff, and a bill of exceptions to this instruction was tendered and allowed. This judgment was affirmed in general term, and the defendant sued out this writ of error.

*Mr. Andrew C. Bradley* and *Mr. William F. Mattingly* for plaintiff in error, among other points, made the following:

It is submitted that the court below erred in setting aside the verdict in the first trial because of the rejection of the assignment by the trial justice, and that it erred in admitting the assignment in evidence, and that the judgment should be reversed and the cause remanded to the court below, with directions to enter judgment upon the first verdict. *Coughlin* v. *District of Columbia*, 106 U. S. 7.

*Mr. Martin H. Morris* for defendant in error (*Mr. H. H. Wells* was with him on the brief) among other points made the following:

It is objected that the so-called assignment does not contain any such acknowledgment of the indebtedness as that the law would imply from it a new promise to pay it. The assignment distinctly acknowledges and recognizes the indebtedness by reference to another paper; in which that indebtedness is specifically described, and which is in evidence in the case. It distinctly promises to pay that indebtedness; and it distinctly gives security for the payment of it. What more than this could be required to constitute a new promise? Was there ever a new promise more distinctly and unequivocally and solemnly evidenced? The evidence is not by loose talk, but by a carefully drawn instrument in writing. If this paper is not evidence of a new promise, it is impossible to draw a paper that would be. If it be necessary to refer to elementary law on the subject of what constitutes a new promise, we would cite, among other authorities, the following: *Moore* v. *Bank of Columbia*, 6 Pet. 86; *Bell* v. *Morrison*, 1 Pet. 351; *Randon* v. *Toby*, 11 How. 493; *Walsh* v. *Mayer*, 111 U. S. 31.

MR. JUSTICE GRAY, after stating the case as above reported, delivered the opinion of the court.

The statute of limitations in force in the District of Columbia is the statute of Maryland, which, so far as applicable to this case, closely follows the language of the English St. 21 Jac. I, c. 16, § 3, but bars an action on a promissory note or other simple contract in three years after the cause of action accrues. Maryland Stat. 1715, c. 23, § 2, 1 Kilty's Laws; Dist. Col. Laws, 1868, p. 284.

The promissory notes sued on were payable respectively on March 10, 1875, and March 10, 1876; and the action was brought March 11, 1880. The question is, therefore, whether the instrument signed by the defendant on June 21, 1877, is evidence of a sufficient acknowledgment or promise to take the case out of the statute.

The principles of law, by which this case is to be governed, are clearly settled by a series of decisions of this court. The statute of limitations is to be upheld and enforced, not as rest-

ing only on a presumption of payment from lapse of time, but, according to its intent and object, as a statute of repose. The original debt, indeed, is a sufficient legal consideration for a subsequent new promise to pay it, made either before or after the bar of the statute is complete. But in order to continue or to revive the cause of action, after it would otherwise have been barred by the statute, there must be either an express promise of the debtor to pay that debt, or else an express acknowledgment of the debt, from which his promise to pay it may be inferred. A mere acknowledgment, though in writing, of the debt as having once existed, is not sufficient to raise an implication of such a new promise. To have this effect, there must be a distinct and unequivocal acknowledgment of the debt as still subsisting as a personal obligation of the debtor.

In *King* v. *Riddle*, 7 Cranch, 168, a deed, dated July 15, 1804, by which the defendant recited that certain persons had become his sureties for a certain debt and had paid it, and that he was desirous to secure them as far as he could, and assigned to one of them certain bonds in trust to collect the money and distribute it equally among them, was admitted in evidence in an action by one of them against him for money paid, to take the case out of the statute of limitations of Virginia. The exact form of the deed is not stated in the report, but that it expressly recognized the debt to the plaintiff to be still due is evident from the opinion, in which Chief Justice Marshall said: "Although the court is not willing to extend the effect of casual or accidental expressions farther than it has been, to take a case out of that statute, and although the court might be of opinion that the cases on that point have gone too far, yet this is not a casual or incautious expression: the deed admits the debt to be due on the 15th of July, 1804, and five years had not afterwards elapsed before the suit was brought." 7 Cranch, 171.

In *Clementson* v. *Williams*, 8 Cranch, 72, in an action on an account against two partners, one of whom only was served with process, a previous statement of the other, upon the account being presented to him, "that the said account was

due, and that he supposed it had been paid by the defendant, but had not paid it himself, and did not know of its being ever paid," was held insufficient to take the account out of the statute; and Chief Justice Marshall said: " The statute of limitations is entitled to the same respect with other statutes, and ought not to be explained away. In this case there is no promise, conditional or unconditional; but a simple acknowledgment. This acknowledgment goes to the original justice of the account; but this is not enough. The statute of limitations was not enacted to protect persons from claims fictitious in their origin, but from ancient claims, whether well or ill founded, which may have been discharged, but the evidence of discharge may be lost. It is not then sufficient to take the case out of the act, that the claim should be proved or be acknowledged to have been originally just; the acknowledgment must go to the fact that it is still due." 8 Cranch, 74.

Chief Justice Marshall afterwards pointed out that in that case, although the partnership had been dissolved before the statement was made, the case was not determined upon that point, but upon the insufficiency of the acknowledgment; and added that, upon the principles there expressed by the court, " an acknowledgment which will revive the original cause of action must be unqualified and unconditional. It must show positively that the debt is due in whole or in part. If it be connected with circumstances which in any manner affect the claim, or if it be conditional, it may amount to a new assumpsit for which the old debt is a sufficient consideration; or if it be construed to revive the original debt, that revival is conditional, and the performance of the condition, or a readiness to perform it, must be shown." *Wetzell* v. *Bussard*, 11 Wheat. 309, 315.

In *Bell* v. *Morrison*, 1 Pet. 351, Mr. Justice Story fully discussed the subject, and, after dwelling on the importance of giving the statute of limitations such support as to make it " what it was intended to be, emphatically, a statute of repose," and " not designed merely to raise a presumption of payment of a just debt, from lapse of time;" and repeating the passages above quoted from the opinions in *Clementson* v.

*Williams* and *Wetzell* v. *Bussard*, said: "We adhere to the doctrine thus stated, and think it the only exposition of the statute, which is consistent with its true object and import. If the bar is sought to be removed by the proof of a new promise, that promise, as a new cause of action, ought to be proved in a clear and explicit manner, and be in its terms unequivocal and determinate; and, if any conditions are annexed, they ought to be shown to be performed. If there be no express promise, but a promise is to be raised by implication of law from the acknowledgment of the party, such acknowledgment ought to contain an unqualified and direct admission of a previous, subsisting debt, which the party is liable and willing to pay. If there be accompanying circumstances, which repel the presumption of a promise or intention to pay; if the expressions be equivocal, vague and indeterminate, leading to no certain conclusion, but at best to probable inferences, which may affect different minds in different ways; we think they ought not to go to a jury as evidence of a new promise to revive the cause of action." 1 Pet. 362.

Again, in *Moore* v. *Bank of Columbia*, 6 Pet. 86, the court, speaking by Mr. Justice Thompson, after referring to the previous cases, re-affirmed the same doctrine, and said: "The principle clearly to be deduced from these cases is, that in addition to the admission of a present, subsisting debt, there must be either an express promise to pay, or circumstances from which an implied promise may fairly be presumed." 6 Pet. 93.

In *Randon* v. *Toby*, 11 How. 493, cited for the plaintiff, the agreement, which was held to take a case out of the statute, contained not only a pledge of property to secure the notes sued on, but an express stipulation that the notes should remain in as full force and effect as if they were renewed.

In *Walsh* v. *Mayer*, 111 U. S. 31, in answer to a letter from the holder of a note secured by mortgage, calling attention to the want of insurance on the mortgaged property, and saying, "The amount you owe me on the $7500 note is too large to be left in such an unprotected condition, and I cannot consent to it," the mortgagors wrote to him that they expected to insure

in about four months for twice that amount, and added, "We think you will run no risk in that time, as the property would be worth the amount due you if the building was to burn down." This was held to be a sufficient acknowledgment, upon the ground that the words, both of the plaintiff's letter and of the defendants' reply, were in the present tense, and designated a subsisting personal liability, and that the unconditional acknowledgment of that liability, without making any pledge of property or other provision for its payment, carried an implication of a personal promise to pay it. The case was decided upon its own facts, and no intention to modify the principles established by the previous decisions was expressed or entertained by the court.

Within a year afterwards, in the latest case on the subject, the court expressly re-affirmed those principles. *Fort Scott* v. *Hickman*, 112 U. S. 150, 163, 164.

In full accord with these views are the decisions in England under St. 9 Geo. IV, c. 14, known as Lord Tenterden's Act, which only restricts the mode of proof by requiring that, in order to continue or revive the debt, an "acknowledgment or promise shall be made by or contained in some writing to be signed by the party chargeable thereby."

The English judges have repeatedly approved the statement of Mr. (afterwards Chief Justice) Jervis, that the writing must either contain an express promise to pay the debt, or, be "in terms from which an unqualified promise to pay it is necessarily to be implied." *Everett* v. *Robertson*, 1 El. & El. 16, 19; *Mitchell's Case*, L. R. 6 Ch. 822, 828; *Morgan* v. *Rowlands*, L. R. 7 Q. B. 493, 497; citing Jervis's New Rules (4th ed.), 350, note. And it has been often held that when the debtor, in the same writing by which he acknowledges the debt, without expressly promising to pay it, agrees that certain property shall be applied to its payment, there can be no implication of a personal promise to pay. *Routledge* v. *Ramsay*, 8 Ad. & El. 221; *S. C.* 3 Nev. & Per. 319; *Howcutt* v. *Bonser*, 3 Exch. 491; *Cawley* v. *Furnell*, 12 C. B. 291; *Everett* v. *Robertson*, above cited.

The law upon this subject has been well summed up by

Vice Chancellor Wigram, as follows : "The legal effect of an acknowledgment of a debt barred by the statute of limitations is that of a promise to pay the old debt, and for this purpose the old debt is a consideration in law. In that sense, and for that purpose, the old debt may be said to be revived. It is revived as a consideration for a new promise. But the new promise, and not the old debt, is the measure of the creditor's right. If a debtor simply acknowledges an old debt, the law implies from that simple acknowledgment a promise to pay it; for which promise the old debt is ·a sufficient consideration. But if the debtor promises to pay the old debt when he is able, or by instalments, or in two years, or out of a particular fund, the·creditor can claim nothing more than the promise gives him." *Philips* v. *Philips*, 3 Hare, 281, 299, 300; *Buckmaster* v. *Russell*, 10 C. B. (N. S.) 745, 750.

In the most recent English case that has come under our notice, Lord Justice Bowen said : "Now, first of all, the acknowledgment must be clear, in order to raise the implica-·· tion of a promise to pay. An acknowledgment which is not clear will not raise that inference. Secondly, supposing there is an acknowledgment of a debt which would if it stood by itself be clear enough, still, if words are found combined with it which prevent the possibility of the implication of the·, promise to pay arising, then the acknowledgment is not clear, within the meaning of the definition ; " "because the words express the lesser in such a way as to exclude the greater." *Green* v. *Humphreys*, 26 Ch. D. 474, 479, 480 ; *S. C.* 53 Law Journal (N. S.) Ch. 625, 628.

In the light of the principles established by the authorities above referred to, it is quite clear that the instrument signed by the defendant on June 21, 1877, did not take the plaintiff's debt out of the statute.

This instrument contains no promise of the defendant personally to pay that debt, and no acknowledgment or mention of it as an existing liability. It begins with a reference, by way of consideration only, to the original debt, designating it as "the indebtedness described in the deed of trust" executed to the plaintiff at the time when that debt was contracted.

Then follows a pledge of a certain claim of the defendant against the government, and its proceeds, to secure the payment of "said indebtedness, with interest thereon at the rate of eight per cent per annum until paid." This interest is mentioned, not as part of the consideration, or of the original debt, or as anything for which the defendant is liable, but only as something to the payment of which the claim pledged shall be applied. And the instrument concludes with a promise of the defendant that the proceeds of the claim pledged shall "be applied to the payment of said indebtedness, with interest as aforesaid, or to so much thereof as the sum or sums of money so received is or are sufficient to pay."

Although the old debt is expressly called, as it is in law, the consideration for the new agreement, this agreement, and not the old debt, is the measure of the plaintiff's right. The provisions for the payment of the debt and interest out of a particular fund exclude any implication of a personal promise to pay either. The whole instrument clearly evinces the defendant's intention in executing it to have been that the property pledged should be applied, so far as it would go, to the payment of the debt and interest, and not that his own personal liability should be increased or prolonged in any respect.

To imply from the terms of this instrument a promise of the defendant to pay the debt himself would be, in our opinion, to construe it against its manifest intent, and to fritter away the statute of limitations.

The result is, that the judgment below must be reversed, and the verdict against the defendant set aside. It was contended by his counsel that this court should now direct judgment to be entered upon a former verdict, which was returned for him under a correct ruling on the question of acknowledgment, and set aside by the court in general term upon a different view of the law. In support of this contention was cited *Coughlin v. District of Columbia*, 106 U. S. 7. But the reason for ordering judgment upon the first verdict in that case was not that the court in general term had wrongly decided a question of law upon a bill of exceptions allowed at the first trial; but that, as appeared of record, independently of any bill of

exceptions, the question had not been legally brought before it at all, thus leaving the first verdict in full force. In the present case, it had authority to entertain and pass upon the exceptions taken by the plaintiff at the first trial; when, in the exercise of that authority, it had sustained those exceptions and ordered a second trial, the case stood as if it had never been tried before; and only the rulings at the second trial, and no rulings, whether similar or different, at the former trial, could be brought to the general term by the exceptions of the defendant, or to this court by his writ of error.

*Judgment reversed, and case remanded to the Supreme Court of the District of Columbia, with directions to set aside the verdict and to order a new trial.*