DESHA BANK & TRUST COMPANY v. QUILLING.

Opinion delivered April 5, 1915.

LIMITATIONS—OVERDUE NOTE—CREDIT THEREON.—One Q. owed a note at appellant bank which was barred by the statute of limitations. Q. thereafter made a deposit in the bank. *Held,* the bank had the right to credit this deposit on the note, but the right to so credit the deposit did not toll the statute of limitations.

Appeal from Arkansas Chancery Court, Northern District; *John M. Elliott,* Chancellor; affirmed.

*J. Bernhardt,* for appellant.

1. Upon the allegation and proof by introduction of the note and Thane's deposition, which remains uncontradicted, that there was a payment made and credited on the note on December 1, 1910, it was conclusively established that the note was not barred. 5 Ark. 551; 28 Ark. 27.

2. As to the authority to make the credit: When the charge was made to Mrs. Quilling's account of $300, which was then credited on her note, she was notified of the fact, and never objected. This is uncontradicted. The proof shows not only tacit acknowledgment of the debt, but also of the right to make the credit. 91 Ark. 170, and cases cited. Moreover, under the condition of the account, the plaintiff had the right under the law to apply any surplus funds in its hands belonging to Mrs. Quilling on her note. 66 Ark. 73; 68 Ark. 399; 76 Ark. 76; 79 Ark. 393; 92 Ark. 245, and authorities cited; 57 Ark. 597; 91 Ark. 458.

*John L. Ingram* and *C. P. Harnwell,* for appellee, Cramer.

1. The statute bar attaches at the expiration of five years from the date of the note. Kirby's Dig., § 5069.

And equity will not decree the foreclosure of a mortgage where the note secured is barred.   77 Ark. 267.

Where the statute of limitations is pleaded, the burden of proof is on the plaintiff.   27 Ark. 343; 53 Ark. 96; 64 Ark. 26; 69 Ark. 311; 70 Ark. 598; 65 Ark. 311.

2.   "An endorsement upon a note of part payment, made by the plaintiff, or in his behalf, is inadmissible to take the case out of the statute of limitations unless it be first shown by evidence *aliunde* to have been actually made and by authority, before the cause of action was barred, and consequently against the interest of the party making it."   9 Ark. 455.

To take the case out of the statute, it is essential to show by the evidence that an actual payment by Mrs. Quilling was made, or that the alleged credit was authorized by her.   10 Ark. 638; 12 Ark. 134; 11 Ark. 666; 22 Ark. 217.

*Maude P. Quilling, pro se.*

Adopts the brief of the intervener so far as applicable, states an account in her brief and contends for its correctness.

SMITH, J.   The parties to this litigation had a great many business transactions and differ very widely in their depositions as to the net result of them all.   The litigation was begun on August 26, 1912, at which time appellants filed a complaint, wherein it was alleged that appellee, Maude Price Quilling, had executed to H. Thane, trustee, a deed of trust on May 4, 1905, to secure a note for $3,000, and that on December 1, 1910, she had paid on this note the sum of $300, which payment had been endorsed on the note and also upon the margin of the recorded instrument.   It was also alleged that Mrs. Quilling was further indebted to the bank in the sum of $2,900, evidenced by a note executed on September 9, 1908, by her and M. W. Quilling, Jr., her husband.   It was also alleged that on February 20, 1908, the interest of Mrs. Myrtle Kimberlin, a sister of Mrs. Quilling, in the estate of her father, N. B. Price, deceased, was acquired by M.

W. Quilling, Jr., by purchase for $1,000, and the title to said interest was taken in the name of Thane as trustee, with the understanding at the time that this interest should become additional security for the $3,000 note. That the purchase price for this interest was advanced by the appellant bank and became a part of the indebtedness for which the $2,900 note was given. It was also alleged that on March 3, 1912, Mrs. Quilling executed a note to the bank for an additional loan of $100, and that there was an open account in favor of the bank for taxes and insurance advanced by the bank in the sum of $315.

The bank appears to have assumed control of the lands belonging to the Quillings and to have made various sales of lands and town lots and to have collected large sums as rents. Out of these transactions it is alleged that the Quillings were largely indebted to the bank and a foreclosure of the deed of trust was prayed. On the other hand, the Quillings say the bank is indebted to them in the sum of approximately $3,000, and judgment therefor was prayed.

On September 3, 1913, appellee Cramer filed an intervention in the nature of an answer and cross-complaint, in which it was alleged that the property upon which appellants claimed a lien was not the property of the Quillings, but had been acquired by his vendor under a foreclosure of a mortgage given by the Quillings, which would be junior to the bank's mortgage if that mortgage was unpaid, but prayed that the bank's mortgage be cancelled. This pleading filed by Cramer set out the transactions between the bank and the Quillings, and denied that any payment had been made on the $3,000 note, and alleged that the note was barred by the statute of limitations. It was further alleged that the conveyance to Thane, as trustee, by Mrs. Kimberlin was in fact a mortgage given to secure the purchase money which was borrowed from the bank, but it was denied that it was intended to secure any additional sum, and it was further alleged that by the deed from Thane, as trustee, executed

on May 9, 1913, to the Quillings, the bank released all liens of any sort against this interest.

The Quillings filed separate answers setting up substantially the same facts recited in the answer and cross-complaint of Cramer, but the details of their transactions with the bank were set up with greater particularity. It was alleged by them that the interest of Mrs. Kimberlin in her father's estate, which had been purchased for the benefit of M. W. Quilling, had been exchanged for other property in the city of Little Rock, over all of which the bank assumed control and collected the rents. They denied that they were indebted to the bank in any sum, but stated the fact to be that the bank would be largely indebted to them if proper credits for rents and proceeds of sales were given. They denied that any payment had been made on the $3,000 note and pleaded the statute of limitations against it.

A wide range was covered in the taking of the proof and the record before us is a voluminous one. There was no reference of the accounts to a master in the court below, with the result that all of the items in controversy below are controverted here. One of the principal questions of fact was the alleged credit of $300 endorsed on the $3,000 note. If there was no such credit, then this note was barred by the statute of limitations. At the time this credit was alleged to have been endorsed on the note the Quillings had an account with the bank. All funds belonging to either of them were kept as a single account and debits and credits were charged and given without reference to the source from which the credits came and checks were drawn in one name. It was testified on behalf of the bank that there was a credit of $371.68 to the Quilling account at the time the $300 credit was endorsed on the note. No direction from the Quillings for placing this credit on the note is asserted, but the bank claims to have taken this action because the note was past due and unpaid. Appellees denied that there was any such appropriation. On the contrary, they say

that on the date of the alleged credit the account stood overdrawn $156, and they say the statements of their accounts subsequently furnished them showed that this alleged credit on the note was not charged against their account.

The bank had the right to credit this deposit on the note, but this right to so credit the deposit did not toll the statute of limitations. It took the exercise of that right to accomplish that result. *Steelman* v. *Atchley,* 98 Ark. 294.

The court below found that the $3,000 note was barred by the statute of limitations; that the conveyance from Mrs. Kimberlin to Thane, as trustee, was intended to secure the bank for the purchase money advanced, and for that alone, and that that sum had been repaid. The court found that there was a balance due on the $2,900 note, and also a balance due on the open account, and rendered judgment accordingly, but decreed that said sums were not secured by any lien. As has been said, both parties appealed, and each undertakes to show that the chancellor was grossly in error, but without discussing the evidence in detail, which would serve no useful purpose, we announce the conclusion that the finding of the court below does not appear to be clearly against the preponderance of the evidence.

Since the trial of this cause in the court below, M. W. Quilling, Jr., has died, and the briefs discuss the right of appellant to hold an insurance policy on the life of Quilling, as collateral, and to apply the proceeds of the policy to the payment of any balance due the bank. No such issue was raised by the pleadings, and the question was not passed upon by the chancellor, and, while some testimony on the question appears in the record, the point was not fully developed, and for these reasons we decline now to pass upon that question, but leave it open for determination in appropriate future litigation.

The decree is affirmed.