TAYLOR *v.* WHITE.

Opinion delivered October 20, 1930.

*A. J. Johnson,* for appellant.

*W. B. Sorrels,* for appellee.

SMITH, J. The Lincoln County Bank closed its doors, and its assets are now being administered by the State Bank Commissioner, who filed this suit November 26, 1929, to enforce the collection of a note dated January 9, 1923, maturing November 15, 1923, payable to the order of the insolvent bank. The note was offered in evidence, and its execution by appellee White was admitted, and on its back the following indorsements appear:

"Dec. 31, 1924, Paid on this note by R. L. Calhoun ................................................................$300.00

2/5/25 paid on note.................................... 2.94"

W. R. Alsobrook testified that he was the cashier of the Bank of Star City, which institution was acting as liquidating agent for the bank commissioner in winding up the affairs of the Lincoln County Bank; that he "judged" the credit of $2.94 was the amount of the deposit of the maker of the note with the Lincoln County Bank at the time it was taken over by the bank commissioner. This, however, was a mere surmise, and the witness did not state it as a fact, nor did he testify that White was a depositor of, or had any balance to his credit with, the Lincoln County Bank when it failed.

As to the apparent payment of the $300 on the note, the testimony is as follows: H. D. Palmer, called as a witness by the plaintiff, testified that he had been the cashier of the Lincoln County Bank, and had indorsed the credit dated December 31, 1924, under these circumstances. He had sent White word to pay the note or "else bring the property in we had a mortgage on," given to secure the note, as it was his intention to sell the mortgaged property and apply the proceeds of the sale on the note, whether White was willing or not. R. L. Calhoun, upon whose farm White lived as a sharecropper, came to the bank and wanted to buy the property mortgaged, and they agreed upon $300 as its price. Calhoun gave a note to the bank for this sum, due the next

fall, which was paid at its maturity, and the $300, the proceeds of this note, were credited upon the note in suit.

White testified that he told Calhoun about the message from Palmer, and Calhoun said he would try to buy the mortgaged property from the bank, and Calhoun later told him he had bought it. White knew, of course, that the mortgaged property was worth much less than the mortgage debt. The mortgaged property appears to have consisted of live stock, probably mules, for, on his cross-examination, White testified as follows: "Q. You turned the stuff over to him (Calhoun)? A. He already had it. Q. You had already turned it over to him (Calhoun)? A. No, sir. He worked the stuff that year for feed." White further testified that Calhoun told him later that he had "bought the stuff."

The transaction just detailed was, in effect and in fact, a foreclosure of the mortgage, with the public sale waived which the mortgage, no doubt, provided for, and was not such a voluntary payment as the law requires to toll the statute of limitations.

The law is well settled that a voluntary part payment arrests the running of the statute of limitations, and forms a new period from which the statute must be computed. This results from the fact that a voluntary partial payment is a recognition of the validity of the debt, from which a promise to complete the payment is implied in law. But, as was said by COCKRILL, C. J., in the case of *Wilson* v. *Pryor*, 44 Ark. 532: "The presumption of a deliberate promise to pay the residue, which the fact of payment raises, can arise only from what would be deemed an actual part payment."

The court below found that there was no proof of an actual voluntary part payment by White, and dismissed the complaint for that reason, and we concur in that view.

The fact of a part payment, which was relied upon to stop the running of the statute of limitations, was denied by White, and the burden was therefore upon

the plaintiff to prove that fact. *Simpson* v. *Brown-Desnoyers Shoe Co.*, 70 Ark. 598, 70 S. W. 305; *Johnson* v. *Spangler*, 176 Ark. 328, 2 S. W. (2d) 1089, 59 A. L. R. 899; *Slagle* v. *Box*, 124 Ark. 43, 186 S. W. 299; *Clark* v. *Lesser*, 106 Ark. 207, 153 S. W. 112.

Certainly the indorsed credit of $2.94, of itself, did not suffice. There was no proof whatever by what authority this had been done. *Desha Bank & Trust Co.* v. *Quilling*, 118 Ark. 114, 176 S. W. 132, L. R. A. 1915E, 794. Indeed, it was a mere surmise on the part of Alsobrook that White had any sum of money to his credit with the Lincoln County Bank when it closed its doors. Nor does the $300 credit suffice. White had no volition in this matter. The transaction was, as we have said, a foreclosure of the mortgage, which Palmer testified was done without regard to White's wishes.

In the note to the case of *Howard* v. *Pritchett*, 207 Ala. 415, 92 So. 782, 25 A. L. R. 55, the annotater says: "With the exception of one case in Missouri, since repudiated, the authorities uniformly support the doctrine that the application to an indebtedness of the proceeds arising from the enforcement of a mortgage or deed of trust does not interrupt the running of the statute of limitations." The annotater cites numerous cases supporting his note, but did not, of course, cite our case of *Meisner* v. *Pattee*, 170 Ark. 217, 279 S. W. 787, as the opinion in that case had not then been delivered. But in the Meisner case, *supra*, we expressly approved the annotater's statement of the law. We there said: "It is settled by practically unanimous authority that the application of the proceeds arising from the foreclosure of a mortgage does not interrupt the running of the statute of limitation. Note to 25 A. L. R. 62."

The judgment of the court below is correct, and it is therefore affirmed.