REYNOLDS v. UNION BANK & TRUST COMPANY.

Opinion delivered December 8, 1930.

*Hogue & Burney,* for appellant.

*Brundidge & Neelly,* for appellee.

SMITH, J.    The Union Bank & Trust Company brought this suit against J. B. Strickland, to foreclose a deed of trust given by him to the bank.  I. N. Reynolds was made a party defendant, for the purpose of foreclosing a lien on a small tract of land which Reynolds had purchased from Strickland, and for which Reynolds had given Strickland a note for $375, dated April 4, 1919, and payable January 1, 1920; the note being secured by a vendor's lien reserved in the deed from Strickland to Reynolds.  This purchase money note from Reynolds to Strickland was deposited by Strickland with the plaintiff bank as collateral security to his (Strickland's) note to the bank.   Strickland renewed his note to the bank from time to time, and the Reynolds note was at all times held as collateral to secure Strickland's indebtedness and the renewals thereof.

Reynolds filed an answer, in which he denied that the bank was an innocent holder of this note, and he alleged also that the note was barred by the statute of limitations, and had been paid.

The testimony leaves no doubt whatever that the bank acquired Reynolds' note in due course as collateral, before its maturity, and it is equally as clear that Reynolds paid Strickland the amount of the note, but the payments were made to Strickland at a time when he was not the holder of the note.

The question in the case is whether the note is barred by the statute of limitations.   The note was dated April 4, 1919, and fell due January 1, 1920, and the suit was filed May 21, 1928, but upon the back of the note a payment was indorsed as follows: "By cash paid to J. B. Strickland Dec. 1, 1924—$75."  This alleged payment was made before the bar of the statute of limitations had fallen, and the suit was brought within less than five years after the date of the payment, so this payment is the controlling question in the case.

Reynolds testified that there was no authority for this credit on the note, and, if this is true, the note was barred, for, as was said by COCKRILL, C. J., in the case of *Wilson* v. *Pryor,* 44 Ark. 532: "The presumption of a deliberate promise to pay the residue, which the fact of part payment raises, can arise only from what would be deemed an actual part payment." *Taylor* v. *White, ante* p. 433, 31 S. W. (2d) 745.

The president of the bank testified that this $75 payment was not made to the bank, but was reported by Strickland as having been made to him by Reynolds, and at Strickland's request the credit was indorsed upon the note while it was in the bank's possession as collateral for Strickland's own note to the bank. This testimony alone would not be sufficient to bind Reynolds as proving that he had made a payment on his note, but it is by no means the only testimony on that subject.

Reynolds, who was Strickland's uncle, was a carpenter by trade, and after buying the land he left the neighborhood in which it was located and went away in search of work at his trade, and he left the property in charge of Strickland, with directions to collect the rent, amounting to $6 per month, and to apply it to the payment of the note. Reynolds himself so testified. Reynolds did not know that Strickland had hypothecated the note, but supposed that Strickland had it in his own possession, and on October 24, 1927, he received a receipt from Strickland showing that the note had been paid in full, which recited "that said note was burned up and this receipt is given in place of the said canceled or paid note."

It is undisputed that Strickland collected rents amounting to as much as $75, and that he had done so not later than the date of the credit of that payment on the note, and it is admitted that Reynolds rented his house under an agreement by which the rent was to be paid to Strickland and credited on Reynolds' note and it is undisputed that Strickland directed the president of the plaintiff bank to indorse the $75 credit on the note, and that this was done before the bar of the statute had fallen.

It is true Reynolds denied that he authorized Strickland to indorse the credit of payment on the back of the note, but it is also true that Reynolds admitted that he directed the rents to be applied to the payment of the note, and it was this agreement which tolled the statute, for, as was said in the case of *McAbee* v. *Wiley,* 92 Ark. 245, 122 S. W. 623: "It is actually the fact of the payment that tolls the statute, and not the indorsement; the indorsement is only a memorandum, or at most an evidence, of such payment; and there can be no stronger proof of such payment than the admission of the defendant himself, who at the trial is then the only person controverting it."

As it is established by the testimony that Reynolds placed Strickland in charge of the property, with directions to collect the rent and apply the rent to the payment of the note, and further that, pursuant to this direction, Strickland did collect the rent and directed the president of the plaintiff bank to indorse the receipt of payment of $75 to Strickland, who was Reynolds' agent to collect the rents and pay them to himself as the payee in the note, we conclude that the chancellor was warranted in finding, as he did find, that a voluntary payment had been made on the note by Reynolds before the bar of the statute had fallen, and the decree, based upon that finding, must therefore be affirmed, and it is so ordered.

MEHAFFY, J., dissent.