TAYLOR *v.* COX.

Opinion delivered June 29, 1931.

*Sam Rorex* and *Nat R. Hughes*, for appellant.

*Owens & Ehrman,* for appellee.

SMITH, J. The facts out of which this litigation arose are simple and without substantial dispute. However, it may be said that the following facts are established by the great weight of the testimony.

Paul D. Cox, who is the son of Mrs. Junie M. Cox, borrowed about $32,000 from the Exchange Trust Company, of Little Rock, Arkansas, with which he purchased stock in a radio corporation, and he deposited the stock as collateral for the loan. The Exchange Trust Company was absorbed by the American Trust Company, and the consolidated bank continued in business under the corporate name of the American Exchange Trust Company. The consolidated bank acquired title to the Cox note, and, when it matured, the bank declined to renew the note or to carry the indebtedness further except upon the condition that Mrs. Cox should join with her son in the execution of a new note for the sum then due. A new note was executed and signed by both Cox and his mother as joint

makers, and we find this note to be both in form and in fact the joint obligation of the makers. This note was due ninety-one days after date, and recited that "we, or either of us," promise to pay the amount thereof to the bank. Presentment for payment and notice of dishonor or protest were waived by all parties makers of the note.

The note recited that to secure its payment the makers thereof had deposited as collateral the original stock then in the hands of the bank and a large amount of additional corporate stock, which was the sole property of Mrs. Cox, and which was particularly described, and the makers severally agreed that, upon failure to pay the note, the holder thereof might sell the collateral, or any substitute therefor or addition thereto, without notice to either maker, at public or private sale, and without advertisement or demand, with the right to apply the proceeds of any or all the collateral to the payment of the costs and expenses of collection, sale and delivery of the stock, and the holder of the note was given the right to purchase at such public or private sale. The net proceeds of the sale were to be applied upon the note.

The holder of the note was given the right to demand additional security from the makers, which they were obligated to furnish after twenty-four hours' notice given either personally or by United States mail, in default of which the right of sale was given, and the makers of the note obligated themselves to pay any deficit remaining to the bank, or to the holder of the note.

It was further provided in the note that: "As part of the consideration and collateral for the payment of this note, and any other liability or liabilities which the American Exchange Trust Company may hold against a maker of this note, said bank shall have the right to apply, and, in the event of garnishment, receivership, bankruptcy or suit of any kind begun as to any of the makers hereof, the total amount of any deposit or collection which such makers may at the time have in, or in transit to, said bank, without notice, towards the pay-

ment of any indebtedness which the said maker may then owe said bank, whether said indebtedness be due according to its terms or not.''

The bank was insolvent on November 15, 1930, and its affairs were taken over by the State Bank Commissioner and are now being administered under the direction of that department. Mrs. Cox filed an intervention in the court where the proceedings were pending, in which she prayed the right to have an individual deposit in the bank credited upon this note, with the privilege of paying the balance due and withdrawing the collateral deposited with the bank when the note was executed. The court accorded Mrs. Cox this right, and the Bank Commissioner has appealed from that order.

The right of Mrs. Cox to this set-off is denied for three reasons: (1) the note is fully secured, and no set-off can be allowed; (2) Mrs. Cox is an accommodation maker and the principal is solvent; (3) if sued by the bank on the note, Mrs. Cox could require the bank to look to the collateral of Paul D. Cox before taking her deposit.

In support of these contentions, an interesting and able argument is presented, and many authorities cited; but we find it unnecessary to review these cases in view of the facts as we find them to be.

It may be said, however, that the testimony does not show whether the present value of the collateral fully secures the note, and the statement is made by counsel for appellee that this is not true, owing to the decline in the market value of the stocks held as collateral; but we do not regard that question as of controlling importance, even though it had been shown that the debt was fully secured. This contention, as well as the second and third, are disposed of when we say that we find from the testimony that Mrs. Cox was not a mere accommodation maker of the note but was a joint maker thereof.

Certainly, under the recitals of the note, Mrs. Cox is a joint maker thereof and primarily liable as such, and the entire testimony in the case confirms that view.

The undisputed testimony shows that the bank was unwilling to renew the original note of Paul D. Cox, and that note was taken up and paid from the proceeds of the second note, and this. first note thus passes out of the case.

The bank not only required Mrs. Cox to execute the note here involved as a joint maker, but it imposed additional requirements which clearly manifest the intention to impose the obligations arising out of that relation. She was required to deposit as additional collateral other corporate stock having a large face value which she owned individually, and she was also required to carry a personal account which was at no time to be less than $13,000. At the time she made this agreement, she had a savings account of $15,000, on which interest was paid at 4 per cent., and she had a checking account of over $1,500. She was allowed to withdraw $2,000 of the savings account, but she at all times thereafter maintained a savings account of as much as $13,000, and it is this deposit, as well as the amount of her checking account, which she seeks to have applied to the note. The ledger page of the bank showing the savings account contained a notation that no check should be charged against it except with the approval of the cashier of the bank.

This officer testified that the deposit was held, not as collateral to the loan, but that it was held as a compensating balance, and, while he testified that a check against this account would have been paid, he admitted that, had such check been drawn, the loan would have been called or declared due or additional collateral would have been required.

Mrs. Cox and her son both testified, and there is no reason to question the truth of their testimony, that, before she agreed to execute the new note, she exacted of her son an agreement that she should share equally with him in the profits or losses from that time on in his stock which the bank then held as collateral. But this is not all. Mrs. Cox went to California on a visit, but before

going she left the key to her safety deposit box with the direction and authority to her son to extract from the box additional stock which she owned individually and to deposit the same as collateral if this requirement was imposed.

In addition to all this, members of the discount board of the bank testified that when the new loan was presented to and approved by them, they relied upon Mrs. Cox's collateral and her ability to pay, reenforced by her agreement with reference to her stock in her safety deposit box.

In view of these facts, we are clearly of the opinion that Mrs. Cox was a joint maker of the note, and had the right to offset the full amount of her deposits against her liability on the note.

It has frequently been held by this court that, when a bank becomes insolvent, a depositor, who is indebted to the bank, may set-off the amount of his deposit in an action by the receiver or assignee to recover on the indebtedness due to the bank, and in the case of *Hughes* v. *Garrett,* 150 Ark. 404, 234 S. W. 265, one of the cases so holding, it was also held that, when a depositor was indebted to an insolvent bank on more than one account, he might direct the application of the deposit to a particular account, in the absence of a prior application of the deposit by the bank on another account.

In the case of *Stroud* v. *American National Bank of Rogers,* 158 Ark. 505, 250 S. W. 525, it was held that the maker and an indorser of a note are initially liable for its payment, regardless of the fact that the note is secured by collateral, and that in a suit upon a note against an accommodation indorser it was no defense that the holder of the note had colluded with the maker to require the indorser to pay where the holder holds collateral out of which it might make its money.

However, while we have said the testimony does not show whether Paul Cox is solvent or insolvent, and is silent as to the value of the collateral, these questions

are unimportant here, for the reason that Mrs. Cox is not an indorser, nor an accommodation maker, but is a joint maker, and is liable as such, and she therefore has the right—frequently recognized and enforced by this court—of offsetting the amount of her deposits in the bank against the demands due by her to the bank. *Steelman* v. *Atchley*, 98 Ark. 294, 135 S. W. 902; *Funk* v. *Young*, 138 Ark. 38, 210 S. W. 143; *Hughes* v. *Garrett*, 150 Ark. 404, 234 S. W. 265; *Desha Bank & Trust Co.* v. *Quilling*, 118 Ark. 118, 176 S. W. 132; *United States F. & G. Co.* v. *Maxwell*, 152 Ark. 73, 237 S. W. 708; *Prudential Realty Co.* v. *Allen*, 25 A. L. R. 938, note II.

The order of the court below conformed to the view here expressed, and it is therefore affirmed.