**In re MAYS.**

No. 330.

District Court, W. D. Arkansas, Harrison Division.

May 3, 1941.

Fuller & Russell, of Eureka Springs, Ark., for bankrupt.

D. D. Panich, of Little Rock, Ark., for William S. Biggs, Special Deputy Commissioner of Finance of State of Missouri.

MILLER, District Judge.

The bankrupt filed his voluntary petition in this court on April 21, 1939. On May 8, 1939, the Wellston Trust Company, a corporation in liquidation, filed its claim which was allowed by the referee on the same date in the sum of $70,079. On July 5, 1940, the bankrupt filed a petition asking for a re-examination of the claim. An

order was made by the trustee for re-examination and a hearing was held on the petition for re-examination on October 9, 1940. At this hearing the bankrupt was present in person and by his counsel. The claimant is a corporation organized under the laws of the State of Missouri, and is in charge of William H. Biggs, Special Deputy Commissioner of Finance of the State of Missouri, and was represented at the re-examination by counsel.

On November 30, 1940, the referee overruled the objections of the bankrupt to the claim and allowed the claim in the sum for which it was filed.

On December 21, 1940, the referee duly certified the questions involved to the Judge of this court for his opinion.

The testimony is undisputed. Briefly stated, the facts are as follows:

The claim is based upon a promissory note executed by the bankrupt on August 25, 1932, due 6 months after date, and executed and payable at the City of St. Louis, Missouri. The note thus became due by its terms on February 25, 1933.

The note bears an indorsement in the following words: "10–25–37. Collateral purchased by the Wellston Trust Company at collateral sale held 10–25–37, for $1.00."

The bankrupt had no notice whatsoever of the sale of the collateral which consisted of 2,100 shares Continental Life Insurance Company stock and 1,000 shares Continental Securities and Holding Company stock.

On July 10, 1934, an involuntary petition was filed against the bankrupt in the United States District Court for the Eastern District of Missouri, in the city of St. Louis. The claimant was a petitioning creditor in that suit. The bankrupt resisted the petition and on May 27, 1937, the same was dismissed by the court.

On March 29, 1938, Mr. H. L. Ponder, an attorney at law, residing at Walnut Ridge, Arkansas, wrote the bankrupt, who at that time was living at Leslie, Arkansas, in which he advised the bankrupt that the note upon which the claim is based had been placed with him for collection. In that letter the attorney stated:

"We have instructions to bring suit in the Federal court at Harrison, and just wondering if something could not be worked out and avoid this litigation and embarrassment to you at this time."

"We do not know what your position is about the matter and would like to hear from you, and we will be glad to help you work this matter out in any way possible."

On April 8, 1938, the bankrupt acknowledged receipt of that letter and among other things stated:

"I note that the Trust Company has disposed of my collateral. This is the first notice I have had and you do not give amount of the credit. Will ask you to kindly let me know the amount they have credited and just what happened to the collateral. * * *

"I do not owe any one except the Wellston Trust Company and the Grand National Bank. My stock in these institutions were selling for nice premium before litigation started. * * *

"I would like to get this note that you hold of the Wellston Trust Company and the note I owe Grand National Bank out of the way. They are all the debts that I have. * * *

"I have been frank in my statement here and have been all the way through. My frank statements herebefore probably have not been prudent, but, of course, a fact, and I guess I will have to continue to fight for right.

"Awaiting further word from you, with kindest personal regards."

On April 11, 1938, Mr. Ponder replied to the letter of the bankrupt, advising that the collateral had been sold and only brought the nominal amount which was credited on the note. In that letter the attorney for the claimant said:

"Having known you for so many years, I am just wondering if it would appeal to you to have a conference about this matter and possibly we can work out some kind of a settlement.

"You know I will be glad to help you in any way possible, and I realize something of the struggles and the long battle in which you have been engaged. Let me hear from you quickly, because my instructions are to bring suit this week."

About that time the bankrupt became ill and so advised the attorney for the claimant.

On June 4, 1938, the attorney, Mr. Ponder, wrote the bankrupt as follows:

"I am in receipt of your letter of the 3rd, and am sorry that you are still confined to your home and hope you will get all right before long. It is impossible to

do anything with the St. Louis people in regard to transferring them any property of any kind whatsoever.

"You can settle this claim for a small and reasonable cash payment, and I think it is the smart thing to do and get rid of it. Otherwise I will be compelled to file suit."

On June 20, 1938, the bankrupt wrote Mr. Ponder, the attorney for claimant, in which he said: "It has now been almost three months since I met you in Little Rock and should have gone direct to the hospital from there, but delayed it almost a week. I wish you would find out just the least amount it would take to satisfy the note of the Wellston Trust Company. I do not have any money, but will try to raise enough to satisfy them. I would suggest that the amount be $500.00 or $1000.-00."

On December 19, 1938, the claimant filed suit against the bankrupt in this court on the note involved. The suit was dismissed for want of prosecution by the court on April 1, 1940, after service had been had on the bankrupt.

In the petition filed by the bankrupt contesting the allowance of the claim, he alleged: "Petitioner desires that a re-examination be had of the claim filed by the Wellston Trust Company, insolvent, now in charge of the Missouri State Commissioner of Finance, for $70,079.00, for the reason that the note on which this claim is based was dated August 25, 1932, and that no payments on the principal or interest have been made by the maker since that time, and that said note, under the laws of the State of Arkansas is barred by the statute of limitations. That this claim was filed and allowed by the referee on May 8, 1939."

At the re-examination hearing counsel for the claimant interposed as defenses against the petition for re-examination and in support of the claim, (1) that the sale of the collateral attached to the note in question on October 27, 1937, and the credit of $1 on the note was such a voluntary payment as to toll the statute of limitations, (2) that the law of the forum does not apply, (3) that the pendency of the involuntary petition in bankruptcy against the bankrupt at St. Louis, Missouri, was sufficient to and did toll the statute of limitations during that time under the provisions of the bankruptcy act, (4) that the bankrupt had acknowledged the debt in writing and thus tolled the statute of limitations, (5) that the listing of the debt in the schedule of liabilities filed by the bankrupt in this court tolled the statute of limitations, (6) that the filing of a plenary suit on December 19, 1938, by the claimant against the bankrupt in the United States District Court for the Western District of Arkansas, Harrison Division, was sufficient to toll the statute of limitations, notwithstanding the dismissal of the suit for want of prosecution on April 1, 1940.

Counsel for claimant on his brief does not seriously contend that the alleged defenses 1, 2, 5 and 6 are valid, but does strenuously contend that defenses 3 and 4 are valid.

■ The law of the forum applies.

In the case of Pettigrew v. Pettigrew, 172 Ark. 647, 291 S.W. 90, 93, the court said: "It is a rule of universal application that questions arising upon the statutes of limitations are governed by the law of the forum, and the doctrine has been often announced by this court." (Citing cases.)

■ The sale by the claimant of the collateral security and the credit on the back of the note of the sum of $1, under the facts did not interrupt the running of the statute of limitations. The bankrupt was not advised of the action taken by the holder of the note until receipt of letter from the then attorney for the claimant which was dated March 29, 1938. Evidently the indorsement of a credit of $1 was a mere method of bookkeeping, but even if there was an actual sale of the collateral pledged by the bankrupt, it did not operate as a voluntary payment which would form a new period from which the statute of limitations would run. Smith v. Farmers' & Merchants' Bank, 183 Ark. 235, 35 S.W. 2d 347; Taylor v. White, 182 Ark. 433, 31 S.W.2d 745.

■ The listing of the debt by the bankrupt in his original petition cannot be construed as an acknowledgment of the debt or as a promise to pay the note. The bankrupt did nothing more than the law required him to do when he listed this note as an outstanding claim against him.

That petition was filed on April 21, 1939, more than five years after the maturity of the note in controversy.

■ The filing of the suit by the claimant in the United States District Court for the Western District of Arkansas, on De-

cember 19, 1938, and the subsequent dismissal of the suit on April 1, 1940, did not toll the statute of limitations. The note was barred under the law of the forum at the time the suit was filed.

This disposes of alleged defenses 1, 2, 5 and 6, and leaves for consideration the alleged defenses Nos. 3 and 4, and I shall consider these defenses in the order named.

At the time the involuntary petition was filed against the now bankrupt in the United States Court for the Eastern District of Missouri, St. Louis Division, on July 10, 1934, the note in question was a valid and enforceable obligation of the bankrupt.

■ Did the filing of such petition toll or suspend the statute of limitations during the pendency of the Petition?

In 37 C.J., § 451, p. 1043, the rule is stated as follows: "The commencement of the proceeding or an adjudication of bankruptcy does not stop or toll the running of the statute of limitations."

In Meyer v. Cunningham, 196 Ark. 1097, 121 S.W.2d 90, 91, the court said: "Under the Bankruptcy Act of 1898 as amended, 11 U.S.C.A., it has several times been held that the running of the general statute of limitations is not suspended during the bankruptcy proceedings." (Citing cases)

To the same effect is the case of Hyder v. Shamy, 45 Ariz. 130, 40 P.2d 974. Collier on Bankruptcy, 14th Ed., Vol. 1, page 1190.

The Congress revised the bankruptcy statute by enacting what is known as the Chandler Act, approved June 22, 1938, 52 Stat. 840–940, 11 U.S.C.A. § 1 et seq. This Act became effective on September 22, 1938.

Subdivision f of Section 11 of the Chandler Act, 11 U.S.C.A. § 29, sub. f, reads as follows: "The operation of any statute of limitations of the United States or of any State, affecting the debts of a bankrupt provable under this Act [title], shall be suspended during the period from the date of the filing of the petition in bankruptcy (1) until the expiration of thirty days after the date of the entry of an order denying his discharge; or (2) if he has waived or lost his right to a discharge, then until the expiration of thirty days after the filing of such waiver or loss of such right or, in the case of a corporation, if no application for a discharge is filed within the period of six months after the adjudication, then until the expiration of

thirty days after the end of such period; or (3) until thirty days after the dismissal of the bankruptcy proceedings, whichever may first occur."

This provision was evidently incorporated in the statute to remedy the situation that prevailed under the Act of 1898, as amended. The Act of 1898, as amended, does not contain any similar provision, and in the absence of such a provision the mere filing of a petition for an adjudication in bankruptcy did not toll or suspend the statute of limitations insofar as claims against the bankrupt were concerned.

There was nothing to prevent the holder of this note from reducing it to a judgment while it was yet an enforceable obligation. There was ample time to do this even after the involuntary petition had been dismissed by the court for the Eastern District of Missouri on May 27, 1937.

■ The provision of the Chandler Act, hereinbefore set forth, is not retroactive and the question of whether the statute of limitations was tolled or suspended during the pendency of the petition is not governed by the provisions of the Chandler Act. There is no provision in the Chandler Act which indicates an intention that the Act should be retroactive in any such case as the one now under consideration.

I now come to the question of whether the bankrupt has acknowledged the debt in writing sufficient to toll the statute of limitations.

General Order in Bankruptcy No. 47, 11 U.S.C.A. following section 53, established and promulgated by the Supreme Court of the United States, provides: "Unless otherwise directed in the order of reference the report of a referee or of a special master shall set forth his findings of fact and conclusions of law, and the judge shall accept his findings of fact unless clearly erroneous. The judge after hearing may adopt the report or may modify it or may reject it in whole or in part or may receive further evidence or may recommit it with instructions."

■ The report of the referee on this question substantially complies with the general order, and the judge is bound by the findings of fact unless from the record and testimony the findings of fact by the referee are clearly erroneous.

I have set forth fully the material portions of the correspondence between the

bankrupt and the attorney for the claimant. The record does not disclose what occurred at the conference held by the parties in Little Rock, Arkansas, but it is reasonable to assume that there the bankrupt and the attorney for claimant discussed proposals of compromise.

■ This correspondence occurred more than five years after the maturity of the note. The bankrupt admitted the execution of the note, but it does not appear that he promised to pay the same according to the legal tenor and effect of the note. The letters passing between the bankrupt and the attorney for claimant must be considered as a whole and the intention of the parties ascertained from the letters and the then existing circumstances. When this is done, I do not find any admission on the part of the bankrupt of the validity of the note, and certainly no promise to pay the note according to its terms was expressly made, and the facts do not justify any inference of a promise to pay the note as demanded by the claimant. This was evidently the construction placed upon the correspondence by the attorney for the claimant, because upon receipt of the letters from the bankrupt dated April 8, 1938, the attorney wrote the bankrupt and stated: "Having known you for so many years, I am just wondering if it would appeal to you to have a conference about this matter and possibly we can work out some kind of a settlement."

If the bankrupt had unconditionally agreed to pay the note in his letter of April 8, 1938, it would not have been necessary to have had a conference in order to work out "some kind of a settlement". Any such an agreement upon the part of the bankrupt would have made it unnecessary to work out any kind of a settlement other than to calculate the amount due according to the terms of the note.

Again, on June 4, 1938, the attorney advised the bankrupt: "You can settle this claim for a small and reasonable cash payment, and I think it is the smart thing to do and get rid of it, otherwise I will be compelled to file suit." This discloses the interpretation placed on the letter of the bankrupt by the attorney representing claimant.

In the case of Morris v. Carr, 77 Ark. 228, 91 S.W. 187, 189, the court in quoting from the case of Shepherd v. Thompson, 122 U.S. 231, 7 S.Ct. 1229, 30 L.Ed. 1156, said: "The statute of limitations is to be upheld and enforced, not as resting only on a presumption of payment from lapse of time, but, according to its intent and object, as a statute of repose. The original debt, indeed, is a sufficient legal consideration for a subsequent new promise to pay it, made either before or after the bar of the statute is complete. But, in order to continue or revive the cause of action after it would otherwise have been barred by the statute, there must be either an express promise of the debtor to pay the debt, or else an express acknowledgment of the debt, from which his promise to pay may be inferred. A mere acknowledgment, though in writing, of the debt as having once existed, is not sufficient to raise an implication of such a new promise. To have this effect, there must be a distinct and unequivocal acknowledgment of the debt as still subsisting as a personal obligation of the debtor."

In the case of Parker v. Carter, 91 Ark. 162-170, 120 S.W. 836, 839, 134 Am.St.Rep. 60, the court said: "It is contended that because in this letter there appears a written agreement 'to settle' that this is sufficient to remove the statute bar. But this language in the letter is not equivalent to an agreement to pay. It is not a recognition of the debt claimed. It is an offer to adjust matters; and the tenor of the letter clearly shows that it is rather a denial of any indebtedness. In order that a written acknowledgment shall be sufficient to remove the bar of the statute, it must impart an unqualified acknowledgment of the debt as one that is due and binding. Beebe v. Block, 12 Ark. 595; Smith v. Talbot, 11 Ark. 666; Harlan v. Bernie, 22 Ark. 217, 76 Am.Dec. 428."

It was evidently the intention of the bankrupt, as well as the claimant, to reach a compromise. The fact that the claimant permitted a subsequent suit upon this note to be dismissed cannot be disregarded. Evidently the attorney for the claimant recognized that the note was barred by the statute of limitations, and unenforceable in Arkansas. He was fair with the bankrupt and considered that the bankrupt had not made a binding statement recognizing that the note was then a valid and enforceable obligation.

■ The findings of fact by the referee appear to be clearly erroneous. The bankrupt did not recognize the note as an enforceable and binding obligation. The most that can be said is that he desired to

get the note out of the way. It was an offer on the part of the bankrupt to adjust the matter. It does not appear that the bankrupt unqualifiedly acknowledged the debt as one that was due and binding on him at that time. And, therefore, I cannot find any definite promise to pay or any acknowledgment of the indebtedness involved herein such as to furnish a new date from which the statute of limitations may operate.

 The statute of limitations that governs is Section 8933 of Pope's Digest of the Statutes of Arkansas, and not the ten-year statute of limitations of the State of Missouri, Mo.St.Ann. §. 861, p. 1139.

The claimant did not file any response to the petition for review. It sought to uphold the action of the trustee in allowing the claim and in the argument before the referee made the contentions heretofore discussed by me.

After the record had been certified to me and I had announced from the bench on April 7, 1941, my findings of fact and conclusions of law in reference to the claim, the attorney for the claimant requested time in which to file an additional brief. This time was granted by the court and the attorney for the defendant has filed an additional or supplemental brief. He has also filed a motion to dismiss the exceptions of the bankrupt to the claim. This motion was filed April 22, 1941, and alleges that the petition for review filed by the bankrupt should be referred back to the referee in bankruptcy with directions that the same be dismissed, and that the objections of the said bankrupt to the claim should be dismissed. Claimant contends that the petition should be dismissed because the claim was approved by the trustee in bankruptcy; that it has been duly filed and approved by the referee and that the bankrupt is not a person aggrieved by the order of the referee in bankruptcy allowing said claim nor a person in interest within the meaning of Section 39, subdivision c of the National Bankruptcy Act, 11 U.S.C.A. § 67, sub. c, which became effective September 22, 1938.

Section 7 of the National Bankruptcy Act, U.S.C.A., Title 11, Section 25, provides that the bankrupt shall disclose to the trustee any information that he has relative to the proving by any person of a false claim against the estate.

Subsection c of Section 39 of the National Bankruptcy Act, U.S.C.A., Title 11, Section 67, sub. c provides: "A person aggrieved by an order of a referee may, within ten days after the entry thereof or within such extended time as the court may for cause shown allow, file with the referee a petition for review of such order by a judge and serve a copy of such petition upon the adverse parties who were represented at the hearing. Such petition shall set forth the order complained of and the alleged errors in respect thereto. Upon application of any party in interest, the execution or enforcement of the order complained of may be suspended by the court upon such terms as will protect the rights of all parties in interest."

Here the bankrupt protested against the allowance of the claim, but notwithstanding the protest of the bankrupt the trustee allowed the claim and the referee likewise allowed the claim.

 No contention was made by claimant that the bankrupt was not an aggrieved party until the matter had been submitted to me. I am definitely of the opinion that the action of the trustee and of the referee in allowing the claim is error. It seems clear that the court has the right under these circumstances to correct this error, sua sponte.

The general orders in bankruptcy adopted by the Supreme Court of the United States on January 16, 1939, 11 U.S.C.A. following section 53, do not include the former general order 27. That order was specifically abrogated by the court. It was further ordered by the Court that the general orders promulgated on January 16, 1939, and effective February 13, 1939, should govern all proceedings then pending, "except to the extent that in the opinion of the court its application to such proceedings would not be practicable or would work injustice, in which event the General Orders and Forms in Bankruptcy heretofore established shall apply."

The allowance of this claim would, in my opinion, work an injustice to the estate of the bankrupt.

In Re Flanders Co., 32 F.2d 654, the Circuit Court of Appeals for the Sixth Circuit said:

"Section 2 of the Bankruptcy Act (11 U.S.C.A. § 11) defines the jurisdiction of the District Court as a court of bankruptcy. Subdivision (10) thereof specifically grants jurisdiction to 'consider and confirm, modify or overrule, or return, with instructions

for further proceedings, records and findings certified to them by referees.' So also, in defining the powers of the referees, Congress was careful by section 38 (11 U.S.C.A. § 66) to make the grant of jurisdiction 'subject always to a review by the judge.' Other reference to a petition for review is absent in the act itself, but the provisions above cited have been interpreted by General Order XXVII (set out under 11 U.S.C.A. § 53) providing: 'When a bankrupt, creditor, trustee, or other person shall desire a review by the judge of any order made by the referee, he shall * * *.'

"These provisions make it clear that the referee is not in any sense a separate court, nor endowed with any independent judicial authority, and is merely an officer of the court of bankruptcy, having no power except as conferred by the order of reference—reading this, of course, in the light of the act; and that his judicial functions, however important, are subject always to the review of the bankruptcy court.' Mr. Justice Pitney in Weidhorn v. Levy, 253 U.S. 268, 271, 40 S.Ct. 534, 535 (64 L.Ed. 898). It is now universally conceded that a bankruptcy court is a court of equity and the referee but the officer or arm of such court. The right of review by the District Court extends to every final order of the referee and may be asserted by any one having a direct substantial interest or by the court, sua sponte. In re De Ran [6 Cir.], 260 F. 732, 739, 740; International Agr. Corp. v. Cary [6 Cir.], 240 F. 101, 104, 105; In re Veler, [6 Cir.], 249 F. 633, 644. The situation is closely analogous to the relationship between a court of general equity jurisdiction and its master, the position of the creditor petitioning for review closely analogous to that of an intervening petitioner in a court of equity having a direct substantial interest in the subject-matter of the controversy. This difference alone would seem apparent, leave must be obtained to file an intervening petition, while, in bankruptcy, such leave is found in General Order XXVII or may be implied from the certification of the issue by the referee. In neither case would there seem any lack of jurisdiction on the part of the court to entertain the petition."

In Re Hopkins, D.C., 15 F.2d 206, the court said: "The allowance of the claim which is contested would destroy this surplus and reduce the scheduled creditors from full to partial payment. In contesting the claim, therefore, the bankrupt is acting, not only for his own interest, but for the interest of other creditors." The court also said: "I am of the opinion that the motion to dismiss the bankrupt's petition on the ground that only the trustee can prefer the petition should be denied."

The motion of the claimant filed herein on April 22, 1941, is denied.

The claim is barred under the laws of Arkansas and is, therefore, denied.

An order dismissing the motion of the claimant to dismiss the exceptions of the bankrupt to the claim and disapproving and disallowing the claim will be entered.