**In re OUELLETTE.**

No. 23448.

United States District Court
D. Maine, S. D.
July 25, 1951.

942

Sidney W. Wernick, Portland, Me., for receiver.

Stanley L. Bird, Waterville, Me., for alleged bankrupt.

CLIFFORD, District Judge.

This matter comes before this Court on the petition of Raymond E. Ouellette, the alleged bankrupt, for review of an order of the Referee in Bankruptcy, declaring the petitioner a bankrupt within the meaning of the Bankruptcy Act of 1898, as amended, 11 U.S.C.A. § 1 et seq. The hearing on the petition for review was had on June 18, 1951, and both parties were represented by their respective attorneys.

The petitioner asserts that he was aggrieved by certain allegedly erroneous findings of the Referee, contained in the order and opinion which accompanied that order. Specifically, the petitioner alleges that the findings of the Referee, (1) that petitioner was insolvent on September 27, 1950, and (2) that petitioner intended to prefer Nelson & Small, Inc., over unsecured creditors of the same class when petitioner gave a mortgage to said Nelson & Small on September 27, 1950, were clearly erroneous.

The hearing on this petition for review was limited by the petitioner solely to the alleged error of the Referee in his finding that the petitioner, Raymond Ouellette, was insolvent as of September 27, 1950. Therefore, although both issues, set out in the preceding paragraph, are properly before this Court for review, the extent of the review, for the reason stated, will be limited to the question of insolvency of the petitioner as of September 27, 1950.

The Referee found, relative to the insolvency of the petitioner, that as of September 27, 1950, the petitioner, as admitted by him, owed at least $39,506.51; that his assets could not be liquidated, within a reasonable time, for an amount sufficient to pay more than $38,000 worth of liabilities; and, because liabilities exceeded assets, the Referee concluded that the petitioner was insolvent.[1]

The issue before this Court is whether there is any evidence on which the Referee could base his finding of fact that the petitioner, Mr. Ouellette, was insolvent within the meaning of the Bankruptcy Act of 1898, as amended. This Court will accept the Referee's finding of fact unless clearly erroneous. Order 47 of General Orders in Bankruptcy, 11 U.S.C.A. following section 53; In re Mays, D.C., 38 F. Supp. 958, 961, affirmed Biggs v. Mays, 8 Cir., 1942, 125 F.2d 693, wherein it was stated that, "The report of the referee on this question substantially complies with the general order, and the judge is bound by the findings of fact unless from the record and testimony the findings of fact by the referee are clearly erroneous."

The test, as required by the Bankruptcy Act, to determine insolvency

1. The insolvency which must be established under Sec. 60 (Preferences) of the Bankruptcy Act of 1898, as amended, 11 U.S.C.A. § 96, is defined by subdivision (19) of Sec. 1, 11 U.S.C.A. § 1(19), as follows: "A person shall be deemed insolvent within the provisions of this Act whenever the aggregate of his property, exclusive of any property which he may have conveyed, transferred, concealed, removed, or permitted to be concealed or removed, with intent to defraud, hinder, or delay his creditors, shall not at a fair valuation be sufficient in amount to pay his debts."

is whether the liabilities of the debtor are greater in amount than all his assets taken at fair value. This is the so-called 'balance sheet' test. "Fair value" is not the valuation that would prevail at a sheriff's sale, sacrifice, or forced sale, nor is it the value to one person or another specially circumstanced. "Fair value" means such a price as a capable and intelligent business man could presently obtain for the property from a ready and willing buyer accustomed to buying such property. Such a value will depend upon many circumstances, such as age and condition of the stock, the state of trade, location of the business, the existence of a lease, and many other things. See Stern v. Paper, D.C.1910, 183 F. 228. No one factor alone is conclusive.

The petitioner contends that the sole basis for determining the fair value of the inventory is the cost of it to him. The cost of the inventory is an important factor to consider. The Referee gave due consideration to this factor in the case, but considered also other important factors, as will later appear, in reaching his conclusions as to the solvency of the petitioner. Evidence relating to the cost of the stock to the petitioner was unsatisfactory in that it was determined by reducing uniformly the retail selling price, as found on the price tags, by thirty-three and one-third percent. No actual record of the original cost to the petitioner was produced by him at any time.

The real and vital difference between the parties in this controversy relates to the finding made by the Referee concerning the fair value placed upon the inventory of the petitioner. Although the parties are not wholly in accord with respect to the valuation of the remaining assets, the difference, one way or another, will not, independently of the inventory item, affect the status of the petitioner on the question of insolvency. This Court, therefore, has carefully scrutinized the transcript of evidence in its efforts to determine whether the Referee was clearly erroneous in his finding that petitioner was insolvent on September 27, 1950.

Much reliance was placed by the Referee on the testimony of Mr. Samuel Richard of Brookline, Massachusetts, an expert appraiser called by the petitioning creditors. Although the petitioner seriously questions the methods used by this witness in making his appraisal, he does not question the qualifications of Mr. Richard as an expert appraiser. Mr. Richard has been in the business of appraising for nearly thirty years; he has appeared as a witness and has given expert testimony as an appraiser in both State and Federal courts. He has done appraising work for many large banking institutions and accounting firms. His appointment as an expert appraiser has been approved by the United States Attorney's Office in Boston, Massachusetts, and by various Probate Courts in Massachusetts. He has had a wide and varied experience over a period of many years in appraising wholesale and retail business and manufacturing concerns, and in the past five years has appraised between a thousand and fifteen hundred business enterprises. In the same period he estimated that he had made appraisals of between one hundred and fifty and two hundred hardware, plumbing, electricial appliance, paint, and wallpaper stores. Although other witnesses were called by the petitioner and testified concerning the value of the inventory, the Referee was amply justified in giving but slight weight to their testimony and in placing must confidence in the testimony of Mr. Richard. Mr. Richard was the only witness who gave a fair value to the business as a unit, and who considered all relevant factors rather than relying on cost alone in determining the fair value of all of the business assets, including the inventory, of the petitioner.

Mr. Richard gave his testimony after an examination of the two stores which were owned and operated by the petitioner and their contents, while accompanied by two of his assistants who aided him in this work. In addition to the examination of the two stores and the stock contained therein, he had available and studied the inventory records kept by the petitioner, and for five days remained in the courtroom listening while testimony was offered by the witnesses called by each side before giving his opinion as to the fair value of

944

this business. In formulating his opinion as to the fair value, he considered the location of the two stores; whether the petitioner had a lease on both or either store that could be sold with the business; he made inquiry concerning accounts receivable, and the kind of accounts outstanding; the size of the stores, and the presence of warehouse facilities. These were among the many factors which he deemed important in making his appraisal.

After a complete study of all of the factors herein related, he gave as his opinion that the fair market value of the inventory, plus all other business assets, was $23,350. He based his opinion on what he believed a willing buyer would pay for the store to take it over and operate it. Admittedly, this figure was $10,000 less than the cost of the stock to Mr. Ouellette, as estimated by Mr. Richard, but in his judgment the inventory was out of balance. That the stock was out of balance was indicated by the 19,000 key blanks, which, according to the testimony of Mr. Richard, could not be sold over a period of years; by the discontinued line of wallpaper in stock; and, by the shortage of many fast-selling items due to the poor credit rating of the petitioner, who did not even have a checking account because of the well-grounded fear that his creditors would attach the same by legal process.

To substantiate the opinion of Mr. Richard, the evidence shows that a copy of the income tax return filed by the petitioner for the year 1949, disclosed a beginning inventory for the year 1950 of $12,650.65. During 1950, the petitioner purchased stock costing him a total of $7,290.40. The sum of these two figures, $19,941.05, indicates the maximum of inventory at cost which the petitioner must have had on hand as of September 27, 1950. Thus by taking Mr. Richard's figure of $20,000 as the fair value of the inventory, and adding thereto the sum of $2,541.64, which counsel for petitioning creditors admitted had previously been excluded because of a misconception as to ownership; the total of $22,-541.64 is in excess of the cost price of the inventory as claimed by the petitioner in his tax return, plus the cost of merchandise purchased by him in 1950.

This Court concludes that the Referee could have reasonably found that the fair value of the inventory was not in excess of $22,541.64. By accepting as accurate the value placed by the petitioner on his remaining assets, the total value of all of his assets, including the inventory, would be substantially less than his total liabilities.

It is the opinion of this Court that the Referee in Bankruptcy was not clearly erroneous in his finding the petitioner insolvent as of September 27, 1950.

It is, therefore, ordered, adjudged, and decreed, that the petition for review be and hereby is denied.